CHARLES R. WAKEMAN AND JOHN N. WAKEMAN, JR.,
COADMINISTRATORS (ESTATE OF JOHN N. WAKEMAN)
ET AL. *v.* COMMISSIONER OF TRANSPORTATION
OF THE STATE OF CONNECTICUT

LOISELLE, BOGDANSKI, LONGO and PETERS, Js.*

Argued January 4—decision released May 8, 1979

*Angelo J. Smeraldi,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Frederick F. Ehrsam, Jr.,* and *Hugh J. Lavery,* with whom, on the brief, were *John M. Claydon, Jr.,* and *William J. Lavery,* for the appellees (plaintiffs).

* By agreement of counsel the case was argued before and decided by four judges.

LOISELLE, J. In a condemnation proceeding, the defendant commissioner of transportation took land belonging to the plaintiffs on the west side of Main Street in the town of Trumbull and deposited an assessment of damages with the clerk of the Superior Court for Fairfield County. The plaintiffs claimed they were aggrieved by that assessment and requested a reassessment of damages by a referee. A referee was appointed and reassessed the damages. From this reassessment, the defendant has appealed.

For some years prior to January 31, 1974, the day of taking, the plaintiffs conducted a retail and wholesale nursery business known as Wakeman Garden Center on their 23.6 acres of land on the west side of Main Street in Trumbull. All of the property was zoned for residential use. Horticulture and farming are permitted uses in residential zones in Trumbull. The cultivation and growth of trees, shrubs, plants and related nursery stock is within the ambit of horticulture. Prior to the taking, the property had 1255 feet of frontage on Main Street with four driveways providing 200 feet of unrestricted access. There was parking for 58 motor vehicles on an area of 26,592 square feet and a display area of 8500 square feet. The commercial operation was concentrated on 2.6 acres in the northeast quadrant of the property. There were six buildings and a lath-roofed, open-sided structure in this area covering a total ground area of 16,674 square feet. Also located in this commercial area was a house rented to a tenant who acted as the night watchman. The northerly boundary of the property is Old Fox Road, an unaccepted, unused old town road, overgrown with vegetation and trees for at least three-fourths of a mile west of Main Street.

On January 31, 1974, the defendant took in condemnation 3.9 acres of land including all but forty feet of the plaintiffs' right of access along the 1255 foot frontage on Main Street. The remaining forty feet of access is located at the north end of the taking. None of the buildings was taken.

Two of the four issues raised by the defendant relate to the court's finding. The defendant first contends that the court erred in refusing to find facts which he claims were material and admitted or undisputed; second, he claims that the court erred in finding certain facts without evidence. Only those claims relating to the draft finding which are briefed and supported by the appendix to the brief are considered. Practice Book, 1978, § 3045; *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 256, 188 A.2d 493 (1963). No change is made in the finding as the facts sought to be added are either contradicted by other evidence, implicit in the findings made, immaterial, or a misconstruing of the evidence. The facts attacked in the finding are supported by evidence printed in the plaintiffs' brief. Consequently, no correction is made in the finding. *Yale University* v. *New Haven,* 169 Conn. 454, 463, 363 A.2d 1108 (1975).

The principal issue presented by this appeal as briefed by all parties is whether the methods used by the court in reassessing damages were within the strictures of General Statutes § 13a-76 which require the court to "make such reassessment of such damages."

In the present case only part of the tract was taken and when this occurs "just compensation" includes recovery for the part taken and for damages

to the remainder which result from the taking. *D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 184, 374 A.2d 163 (1976); *Bowen* v. *Ives,* 171 Conn. 231, 238, 368 A.2d 82 (1976); *Plunske* v. *Wood,* 171 Conn. 280, 283, 370 A.2d 920 (1976). "The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value. *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5." *D'Addario* v. *Commissioner of Transportation,* supra, 184-85. Also considered are any and all damages which will foreseeably follow from the proper construction of the project, including any damages to the remainder which are a necessary, natural and proximate result of the taking. *Bowen* v. *Ives,* 171 Conn. 231, 236, 368 A.2d 82 (1976); *Budney* v. *Ives,* 156 Conn. 83, 88, 239 A.2d 482 (1968).

Both sides offered evidence on "cost to cure" or the cost of adapting the remaining land to the existing nursery business due not only to the loss of parking and display area, but more importantly, due to the loss of access. Any expense which is reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded. *Andrews* v. *Cox,* 127 Conn. 455, 459-60, 17 A.2d 507 (1941). "The certainty or probability of future expenditures on the property rendered necessary or desirable by the changed conditions resulting from the completion of the public improve-

ment, may affect the present value of the property after the improvement is completed, but they affect it only indirectly and are not in themselves recoverable items of damage." *Gaylord* v. *Bridgeport,* 90 Conn. 235, 240, 96 A. 936 (1916). As stated in *Andrews* v. *Cox,* supra, 460, "[t]he more accurate statement is, however, that such expenses are not recoverable as such but are evidence of elements in the decrease in market value, of which they may be an accurate measure." See also 27 Am. Jur. 2d, Eminent Domain § 314. Cost to cure is an element to be considered in reaching a valuation only when it is no greater in amount than the decrease in the market value of the premises if left as they stood. 4A Nichols, Eminent Domain (3d Ed.) § 14.22. If the cost to cure does restore the property to its former relative position, then the condemnee is not entitled to the cost of restoration in addition to an award for the difference in the before or after value. 5 Nichols, Eminent Domain (3d Ed.) § 23.2.

The defendant claims that the court, "in reassessing damages, combined the before-and-after-valuation method of assessing damages with the cost-to-cure method of assessing damages, thereby substantially, unnecessarily and unjustly increasing the damages awarded to the plaintiffs."

A recital of all of the facts found by the court is not necessary and would unduly lengthen this opinion. A major issue to all parties was the loss of parking and the display area, but of paramount importance was the limited access at the location designated by the defendant's taking. The defendant, in his brief, admits that in effect he conceded that the taking would require certain expenditures in mitigation of damages and offered evidence

to that end.  Significantly a portion of his expert evidence on this issue was adopted by the court over that presented by the plaintiffs.

The plaintiffs proposed that access to the remainder of the land be accomplished by improving Old Fox Road with a fifty-foot-wide town-approved road for a distance of 355 feet from Main Street to connect with a truck road to the rear of the commercial buildings and by demolishing the watchman's house and leveling that area to provide parking and display space.  The court rejected the proposal to construct a road on Old Fox Road as too expensive.

The defendant's engineer proposed a twenty-foot-wide gravel drive from the forty-foot accessway on Main Street to pass to the north of the watchman's house, then south to the rear of the commercial buildings, and then to the loading dock on the south side of the warehouse.  The court found the twenty-foot road would be too narrow to allow tractor trailers and wide trucks to pass safely.  It also found that the plan proposed by the defendant for parking was inadequate for the nursery operation and would eliminate the display area amounting to 8500 square feet of space.  It determined that the watchman's residence should be demolished and that that area be leveled so as to provide parking and display areas on the more desirable Main Street side of the commercial buildings.  The following finding reveals the reasoning of the court: "The service road on the northerly side of the property and then leading southerly to the warehouse loading dock, as projected by the defendant's consultant, widened, however, to thirty feet for safety reasons and to eliminate a tight straitjacket operation, coupled

with the leveling-off of the rocky, hilly area of the house, as advocated by the plaintiffs' engineer, and demolishing the house, rather than moving it as its age and condition make that impractical, is the most equitable and fairest solution of that phase of the damage resulting from the taking, and still permit (sic) the plaintiffs to remain in business."

The court found that the total value of the land, buildings and site improvements before the taking was $670,188. This finding is not attacked by the defendant. It then found that "[a]fter the taking, the plaintiffs lose 1215 feet of their 1255 feet right of access on Main Street, a loss of 96.8 percent. The four entrance drives shrink from 200 feet to 40 feet, an 80 percent loss. These losses, coupled with the five-foot high chain link fence along the non-access line, result in considerable depreciation in the after-value of all of the remainder." This finding is not attacked either. The court concluded that the value of the remainder after taking was $340,806 resulting in damages of $329,382.

As previously stated, the defendant claims that the after-taking amount of $340,806 was the combination of the after valuation plus the cost to cure. On a cursory reading, the memorandum of decision might be interpreted this way since it lists the after values and the cost to cure and these are combined to reach a "net after value." A fair reading of the finding, however, discloses that the after value stated by the court is that value after the cost to cure would be incurred, as the findings state that "[t]he one-acre site of the house will be included and valued in the commercial area after the taking. . . . The reasonable and fair after value of the remainder is dependent upon the construction of the service road

north and west of the buildings from the accessway to the loading dock." Upon reexamining the memorandum of decision, it becomes apparent that the court did list the after values as stated in the finding as the remainder would be after the cost to cure was incurred. This conclusion is further supported by the court's designation of the final figure as "net after value."

The present case is not one where the cost to cure would bring the after value to the level of no damage to the remainder as noted in *Bishop* v. *Meriden*, 114 Conn. 483, 485, 159 A. 289 (1932), but such expenditures are considered to determine an after value of land with such improvements. Otherwise, the remainder would probably not have any substantial value for a commercial enterprise. Even with the contemplated improvements, the commercial enterprise is in a much less desirable situation because its frontage, except for forty feet, will be lined with a chain link fence. Moreover, the forty-foot accessway was found by the court to be "insufficient to permit proper utilization of the remainder and the orderly and safe ingress and egress to the property by customers, tradesmen and truckers without unnecessary delay and hindrance." Therefore, the court correctly considered the cost to cure expenditures in its determination of the after value of the remaining land after taking.

The final issue briefed by the defendant is the court's recommendation that the state expand the forty-foot accessway to seventy feet to provide a safer operation and better public convenience. The court is limited by General Statutes § 13a-76 to reassessing damages caused by the taking. Therefore, any finding or conclusion which advises the

defendant as to enlargement or diminution of the taking is purely advisory and of no judicial force. *Plunske* v. *Wood,* 171 Conn. 280, 284, 370 A.2d 920 (1976).

The plaintiffs bring to our attention an arithmetic error in the judgment. The judgment finds $341,000 as the damages for taking. The finding states the damages to be $329,382. The finding is controlling. The award, after deducting the $118,900 deposited, should be corrected to $210,482.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs for $210,482 with interest from date of deposit, February 5, 1974, to date of payment, and costs, which costs include appraisal fees and expert testimony fees in the amount of $3100.

In this opinion the other judges concurred.