F. FRANCIS D'ADDARIO ET AL. *v.* COMMISSIONER OF TRANSPORTATION

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

356

Argued January 11—decision released April 22, 1980

*William A. McQueeney,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Frank W. Murphy,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellees (plaintiffs).

PETERS, J. This is the second appeal by the defendant commissioner of transportation from the judgment of a state referee who, exercising the powers of the Superior Court, in accordance with General Statutes § 13a-76, reassessed the damages resulting from the condemnation of a portion of the property of the plaintiff, F. Francis D'Addario.

The defendant has assigned error to the factual and legal conclusions that led the trial court to award damages in the amount of $65,700 and costs, and has challenged certain evidentiary and procedural rulings as well. The proceedings below were the result of a new trial ordered by this court upon the commissioner's first appeal. *D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 374 A.2d 163 (1976) (hereinafter *D'Addario I*).

The underlying facts are not in serious dispute and do not differ from those reported in *D'Addario I*: Prior to May 25, 1973, the plaintiff owned approximately 3.6 acres of undeveloped land in Fairfield. On that date, the defendant took from the plaintiff by way of eminent domain two drainage rights-of-way, amounting in all to 0.13 acres, and an easement to install a chain link fence in connection with a project to drain and relocate Turney's Creek so as to improve drainage in the surrounding area. The project involved the construction of three box culverts and considerable sanitary sewer work over an area about a mile in length, with most of the work involved lying outside of the area of the plaintiff's property. The construction of the entire project was to be performed in 780 days.

The plaintiff's property has legal access only to the King's Highway Cut-off, U.S. 1A, being otherwise effectively landlocked because of the elevation of surrounding property. Its legal access consisted of a driveway approximately sixty-five feet wide. The reconstruction of Turney's Creek involved the construction of a box culvert across this accessway to the plaintiff's land. During the period of construction, which was originally projected to take two years, and in fact took slightly longer, there was

interference with the plaintiff's access to his property, although full and unrestricted access was thereafter restored.

The defendant in its original notice of taking assessed the plaintiff's damages at $3600. At the trial in 1974, the trial court reassessed the damages, finding the plaintiff entitled to $18,700 for the property actually taken, and to $34,500 for a two-year constructive easement for the deprivation of access to and use of his property. In the first appeal, the state did not contest the reassessment from $3600 to $18,700, but challenged the award for the constructive easement as inappropriate as a matter of law and unproven as a matter of fact. *D'Addario I,* supra, 184. Upholding the position of the state in part, this court held, *D'Addario I,* supra, 186, that "[b]ecause the court failed to find that the constructive easement was the foreseeable, necessary, natural and proximate result of the taking, and because the finding fails to support the damage award reached, the judgment cannot stand," and ordered a new trial. The order for a new trial necessarily implied that the plaintiff's claim to a constructive easement had been rejected as a matter of fact but not as a matter of law.

I

Before reaching the merits of the substantive issues raised by the new appeal, we will consider first the various evidentiary and procedural rulings that have been assigned as error by the defendant. The defendant argues that the trial court should have: (1) permitted introduction of evidence that the town of Fairfield was responsible for construction delays that contributed to the denial of access to the plaintiff's property and (2) permitted the

defendant to cite in additional defendants, the town of Fairfield and the contractor Brunalli, and to consolidate actions against them, when their conduct contributed to the denial of access to the plaintiff's property. The trial court rejected these claims in the proceedings that led to *D'Addario I,* and rejected them again when they were renewed upon the retrial.

Since these various claims were assigned as error in the appeal in *D'Addario I,* it is arguable that this court's failure to address these claims in that opinion is tantamount to a conclusion that the rulings were correct, and have become part of the law of the case. *Laurel, Inc.* v. *Commissioner of Transportation (Laurel II),* 173 Conn. 220, 222, 377 A.2d 296 (1977); *Gray* v. *Mossman,* 91 Conn. 430, 434, 99 A. 1062 (1917). Because the first judgment in the plaintiff's favor was set aside in *D'Addario I;* cf. *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* 180 Conn. 11, 23, 428 A.2d 789 (1980); and because the opinion in *D'Addario I* does not expressly consider the claims on their merits, it is preferable to deal with them directly on this appeal. We find all three claims to be groundless.

In essence, these evidentiary and procedural motions are all founded on the same proposition, that if there was interference with the plaintiff's access to his property, that interference was due, at least in part, to the conduct of third parties and hence was not the responsibility of the defendant. The trial court found, however, that all of the construction delays were attributable to contract specifications required by, and approved by, the state of Connecticut. Under these circumstances, neither the town of Fairfield, nor the contractor Brunalli,

could have been made liable, under General Statutes § 52-102a,[1] for any part of the plaintiff's claim against the defendant and consolidation was not required. The rulings of the trial court were well within its discretion. *American Oil Co.* v. *Valenti,* 179 Conn. 349, 360, 426 A.2d 305 (1979); *Doran* v. *Wolk,* 170 Conn. 226, 232, 365 A.2d 1190 (1976); *Rode* v. *Adley Express Co.,* 130 Conn. 274, 277, 33 A.2d 329 (1943).

The defendant also renews the argument, first raised in its appeal in *D'Addario I,* that the court had no jurisdiction to award damages for the constructive easement, because the taking certificate did not encompass such an easement and the amended appeal did not, in timely fashion, raise the issue, the amendment having been filed on August 6, 1974, more than six months after the taking date of May 25, 1973, in violation of the provisions of General Statutes § 13a-76.[2] Although matters relat-

---

[1] Section 52-102a provides in relevant part: "IMPLEADING OF THIRD PARTY BY DEFENDANT IN CIVIL ACTION. A defendant in any civil action may move the court for permission as a third-party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. Such a motion may be filed at any time before trial and such permission may be granted by the court if, in its discretion, it deems that the granting of the motion will not unduly delay the trial of the action nor work an injustice upon the plaintiff or the party sought to be impleaded."

[2] Section 13a-76 provides in relevant part: "APPEAL. Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and said court or such judge, after causing notice of the pendency of such application to be given to said commissioner, shall appoint a state referee to make such reassessment of such damages or such benefits."

ing to proof of denial of access may not have been foreclosed by the decision in *D'Addario I,* the remand for a new trial on the facts could not have been ordered without an implied ruling that the matter was jurisdictionally appropriate for decision. Furthermore, the amendment of the pleadings suggested by the trial court in the original hearing was no more than an amplification of issues appropriately raised by the first count of the appeal which was itself timely filed. See *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* supra, 35, and cases there cited. The rulings by the trial court that permitted the amendment to the appeal were therefore well within its discretion. *Wesson* v. *F.M. Heritage Co.,* 174 Conn. 236, 239–40, 386 A.2d 217 (1978); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 454, 352 A.2d 291 (1974).

## II

The substantive issue relating to the constructive easement that remained for retrial after *D'Addario I* can conveniently be divided into three sub-parts: (1) Did the taking by the defendant deprive the plaintiff of access to his property during the period of construction at Turney's Creek? (2) Was the interference with the plaintiff's access a foreseeable, necessary, natural and proximate result of the taking? (3) What are the damages that result from the taking? The trial court answered the first two questions in the affirmative, and reassessed damages in the amount of $65,700, of which $16,000 was attributed to the difference in the value of the property itself before and after the taking, and $49,700 was attributed to the deprivation of access. As in *D'Addario I,* the defendant does not contest the

reassessment of damages from $3600 to $16,000, but does contest every aspect of the court's findings and conclusions as they relate to deprivation of access. It is noteworthy that these assignments of error challenge determinations that are essentially factual, in light of the holding in *D'Addario I,* and that the scope of our review is determined by the rule that the judgment of the trial court cannot be reversed or amended unless it is clearly erroneous in light of the evidence and the record as a whole. Practice Book, 1978, § 3060D. We find no basis in this record for reversal of the judgment of the trial court.

On the question of denial of access, the parties are in agreement, as the trial court found, that box culvert 201, one of the three box culverts involved in the Turney's Creek project, was constructed directly across the entire entranceway to the plaintiff's property. The defendant argues that access was nonetheless not denied the plaintiff because temporary access was maintained throughout the period of construction by means of temporary fill, as evidenced by the fact that the plaintiff's land was used, with the plaintiff's permission, by the contractor Brunalli as a place for storage of trucks and materials. The defendant also argues that the contractor had a legal obligation to provide continual legal access and was never asked by the plaintiff to do anything further to facilitate ingress and egress to and from the plaintiff's property. The court found, however, that the temporary access that the contractor was obligated to provide was only limited access and not equivalent to the full, complete, and unrestricted access necessary for the full development of the property for its highest and best use. The plaintiff, having been deprived of his rights

to unrestricted access, was entitled to be compensated for this loss. Our review of the evidence and the record makes it clear that this finding was certainly not clearly erroneous.

Whether denial of access was a foreseeable, necessary, natural and proximate result of the taking is a question resolved in part by *D'Addario I*. Clearly, if denial of access during the period of construction after a taking could never be deemed to flow proximately from a taking, there would have been no point to a remand to determine damages under such a claim, when the state had already conceded the correctness of the remainder of the reassessment. In any case, the opinion states expressly that: "When only a part of a tract of land is taken for the public use, 'just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. . . . The use to be made of the land taken is to be considered with regard to its effect on the remaining land, and the fact that injuries are caused by the construction activities of the contractor is not a bar to recovery so long as the damages foreseeably follow such construction activities and are a necessary, natural and proximate result of the taking." *D'Addario I,* supra, 184–85. See *Bowen* v. *Ives,* 171 Conn. 231, 238, 368 A.2d 82 (1976); *Meriden* v. *Highway Commissioner,* 169 Conn. 655, 659, 363 A.2d 1094 (1975); *Budney* v. *Ives,* 156 Conn. 83, 88, 239 A.2d 482 (1968); *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942); *Andrews* v. *Cox,* 127 Conn. 455, 458–59, 17 A.2d 507 (1941); all cited in *D'Addario I; Wakeman* v. *Commissioner of Transportation,* 177 Conn. 432, 435, 418 A.2d 78 (1979); 4A Nichols, Eminent Domain (3d Ed.) §§ 14.24, 14.243 and 14.2431.

The trial court found that damages attributable to deprivation of access during the period of construction were foreseeable and the necessary, natural and proximate result of the taking of the plaintiff's property. Proximate result for the purpose of eminent domain is not a criterion susceptible to precise definition in the abstract apart from the particular circumstances of particular cases. One test for proximate result is that damages will be recoverable by the condemnee only if they arise out of a loss that the condemnor could reasonably foresee as a probable result of the taking at the time of the taking.[3] Measuring damages by this test, the trial court was not clearly erroneous in its finding that interference with access was proximately related to the nature of the construction at the time of the taking. Some interference with access was inherent in the location of a box culvert directly across the plaintiff's accessway. There was ample evidence, furthermore, that delays in completion of the work at this site were attributable to actions of the defendant in delaying the process of finalizing the award to the contractor and in executing numerous construction orders to change the design of the work to be done. There was thus no error in the court's conclusion of a proximate relationship between the denial of access and the taking.

The final question, dispositive of this appeal, is whether the trial court erred in its award of damages relating to the denial of access to the constructive easement as it was denominated in *D'Addario I*. The principles that relate to a reassessment of

[3] Compare the law of proximate cause in the law of contracts which also is designed to impose limits on the recovery of consequential damages. See Restatement (Second), Contracts § 365 (Tent. Draft No. 14, 1979); Calamari & Perillo, Contracts § 14-5 (2d Ed. 1977); 5 Corbin, Contracts § 997 (1964).

damages have often been stated. Damages recoverable for a partial taking are measured by application of the "before and after rule," to determine "the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942); *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* 180 Conn. 11, 37, 428 A.2d 789 (1980); *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 298–99, 426 A.2d 280 (1979); *Wakeman* v. *Commissioner of Transportation,* 177 Conn. 432, 435, 418 A.2d 78 (1979); *Hanson* v. *Commissioner of Transportation,* 176 Conn. 391, 400, 408 A.2d 8 (1979); *Smith* v. *Zoning Board of Appeals,* 174 Conn. 323, 328, 387 A.2d 542 (1978); *Plunske* v. *Wood,* 171 Conn. 280, 283–84, 370 A.2d 920 (1976). The fair market value is the price that the trier reasonably thinks would result from fair negotiations between a willing seller and a willing buyer, contemplating the highest and best possible use of the land, giving a prudent investor the greatest financial return. *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* supra, 37; *Tandet* v. *Urban Redevelopment Commission,* supra, 299; *Lynch* v. *West Hartford,* 167 Conn. 67, 73, 355 A.2d 42 (1974); *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 411, 270 A.2d 549 (1970).

In determining fair market value, the trial court is free to select the method of valuation most appropriate to the case before it. *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* supra, 37–38;

*Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13 (1972); *Birnbaum* v. *Ives,* 163 Conn. 12, 18, 301 A.2d 262 (1972); *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 414, 270 A.2d 549 (1970); *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43–45, 255 A.2d 836 (1969); *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142–43, 204 A.2d 833 (1964). When, as here, the trier has visited the property to be appraised, he may rely on his visual observations to supplement the evidence presented for his consideration by the witnesses under oath. *Birnbaum* v. *Ives,* supra, 20; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9 (1967); *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965). In condemnation proceedings, the trial court is more than a trier of facts or an arbiter of differing opinions of witnesses; it is charged with the duty of making an independent determination of value and fair compensation in light of all the circumstances, the evidence, its general knowledge and its viewing of the premises. *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 253, 377 A.2d 302 (1977); *Laske* v. *Hartford,* 172 Conn. 515, 520, 375 A.2d 996 (1977); *Gebrian* v. *Bristol Redevelopment Agency,* 171 Conn. 565, 576, 370 A.2d 1055 (1976); *Bowen* v. *Ives,* 171 Conn. 231, 239, 368 A.2d 82 (1976); *Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13 (1972).

The trial court's reassessment of damages found that the value of the property taken from the plaintiff was $396,000 before the taking and $380,000 thereafter, for a diminution in value in the amount of $16,000. These figures have not been contested by the defendant upon this appeal. The court found

an additional diminution in value by reason of deprivation of access, which the court valued at $49,700. The defendant, relying principally on the recent case of *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 426 A.2d 280 (1979), urges us to disapprove this additional diminution in value as too remote, hypothetical and speculative. We do not agree that this case is governed by the holding in *Tandet.*

The trial court noted that the land that was partially taken and affected by the lack of access was, although undeveloped, zoned for industrial use. There was uncontroverted evidence that industrial zoning permitted use of the property for commercial purposes, and that the plaintiff had been negotiating, in 1969, for the development of the property for a shopping center. These activities were suspended when the plaintiff received notice from the defendant, early in 1970, that the property would be affected by the Turney's Creek drainage project. The court could reasonably conclude that a buyer considering purchase of the plaintiff's land would have to take into account, in setting a purchase price, that the defendant's actions would effectively deprive the owner of the use and occupancy of the land during the period of construction. The only evidence as to the amount of the damages attributable to this temporary interference with beneficial use of the plaintiff's property was evidence offered by the plaintiff's appraiser, since the defendant consistently maintained that there had been no cognizable deprivation of access. The plaintiff's appraiser testified, and the trial court agreed, that the diminution in the value of the property because of the denial of access should be measured by the rental value of the property during the two years

and three months' time during which construction work was necessary. This rental value was found to be $38,000 per year; the loss of income during the period of construction, computed as of the date of taking, on the basis of a reasonable rate of return of ten percent, was $66,300. Because the property would have required substantial work before it could have been placed into rental condition, the court further discounted its rental value by 25 percent and thus arrived at its damage figure of $49,700.

The defendant does not dispute the arithmetic that led to the calculation of additional damages in the amount of $49,700, but contests the appraiser's testimony that diminution in value can be measured by loss of rental value and also his recommendation that the rental value of undeveloped real property should be found by taking 10 percent of its value. The state thus assigns error as a matter of law and of fact to the court's finding that $38,000 was a reasonable rental value reasonably measuring the plaintiff's loss. Considering all of the facts and circumstances contained in the evidence and the record, we do not agree that the trial court was clearly erroneous either in the methodology it adopted to measure temporary appropriation of a constructive easement or in its fact-finding in measuring the value of the plaintiff's deprivation of access. The court's conclusion that the property taken could have been profitably used for commercial purposes, and that this reasonable use of the land was impaired by a period of deprivation of access, did not involve inadmissible speculation about future profits, as in *Tandet* v. *Urban Redevelopment Commission,* supra, or in *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 207, 177 A.2d 677 (1962). See *Key-*

*stone Associates* v. *New York,* 55 App. Div. 2d 85, 90, 389 N.Y.S.2d 895 (1976); *Great Atlantic & Pacific Tea Co.* v. *New York,* 22 N.Y.2d 75, 87, 238 N.E.2d 705 (1968). As in *Laurel, Inc.* v. *Commissioner of Transportation (Laurel III),* supra, 43–44, the defendant's taking impaired the value of the plaintiff's present rights in the property as land owner and as entrepreneur in a manner that would with reasonable probability have been reflected in a fair sale between a willing seller and a willing buyer. It bears emphasis that valuation is a matter of fact to be determined by the trier's independent judgment of what is just compensation; *Gebrian* v. *Bristol Redevelopment Agency,* 171 Conn. 565, 576, 370 A.2d 1055 (1976); and that "the question of what is just compensation is an equitable one rather than a strictly legal or technical one." *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340 (1963).

There is no error.

In this opinion the other judges concurred.