[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on a remand from the Connecticut Supreme Court. Alemany v. Commissioner of Transportation, 215 Conn. 437. The Commissioner originally filed a notice of condemnation on property owned by the plaintiff Joseph Alemany and located on Danbury Road also known as Route 7 in the Town of Wilton. Damages for the taking were assessed at $7200.00.
The plaintiff appealed the assessment to the Superior Court and after a hearing that court found the damages to be $9600.00. This decision was appealed to the Supreme Court and, after a hearing, the Supreme Court found that the trial court "adopted an unduly narrow approach to the assessment of damages," Alemany v. Commissioner, supra, 446, and remanded the case to the Superior Court.
In its remand the Supreme Court stated: "The trial court's failure to consider these important elements of the plaintiff's severance damages necessitates a remand for the purpose of reassessing damages. On remand, the trial court should consider the value of the plaintiff's property in light of the current highway project and any other changes that are so likely to occur in the future that they may reasonably be held to affect present value." Alemany v. Commissioner, supra, 448.
In assessing severance damages, one must "[take] into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value. Alemany v. Commissioner, supra, 446; Lefebre v. Cox, 129 Conn. 262, 265,28 A.2d 5 (1942); Wakeman v. Commissioner of Transportation,177 Conn. 432, 435, 418 A.2d 78 (1979); D'Addario v. Commissioner of Transportation, 172 Conn. 182, 184-85, 37 A.2d 163 (1976)."
The original notice from the Department of Transportation to the plaintiff describes the project as a "Major Widening of U.S. CT Page 5687 Route 7." See Plaintiff's Exhibit D. The actual Notice of Condemnation and Assessment of Damages dated March 7, 1986 is for an easement only for highway purposes and its appurtenances. The land described therein is on the easterly side of Route 7 at its intersection with Holleyhock Road. The easement borders on Route 7 for a distance of some 80.53 feet. It is rectangular in shape and contains 0.02 acres more or less. Contained within the easement is a buffer strip along Route 7 approximately 9 feet in width. Located within this buffer is an electrified sign calling attention to passersby of the business at that location. This sign is imbedded in concrete and is affixed to the real estate.
To date the Commissioner has taken no action toward any widening of Route 7 at that location that would invade the area of the easement. Should he exercise that right at some future date, it would require a moving of the buffer strip and if this were to occur it would have a substantial impact on the remainder of the plaintiff's land. In fact there has already been a serious impact on his ability to keep and retain tenants for the premises. When the notice of condemnation was given the major tenant, a dentist, moved prior to the expiration of his lease. Plaintiff's testimony showed that he has had considerable difficulty in keeping the premises occupied.
The zoning authorities of the Town of Wilton have indicated to the plaintiff that in the event the state does make use of the easement the buffer strip along Route 7 will have to be relocated unless a variance is obtained. Replacing the buffer strip will have a significant impact on the plaintiff's property.
The marketability of the subject property has certainly been affected by the taking of the easement. A prospective purchaser or tenant would have to be informed of the easement and effect it might have upon the subject property. The plaintiff, by his testimony, has already shown the difficulty he has encountered in his efforts to keep the property occupied.
The plaintiff would suffer the loss of at least two parking spaces as well as requiring the replacement or relocation of the electrical sign and a storm sewer drain. According to the testimony of the plaintiff himself, a real estate broker of some standing, there would be in his opinion a loss of three parking spaces from an already limited number or spaces. This would have a diminishing effect on the value of the remainder of his property. It was the plaintiff's testimony that the value of his CT Page 5688 property has declined some 23% or $101,200.
The plaintiff's expert in his testimony stated that in the event the buffer strip has to be moved, there would be a loss of two parking spaces as well as the necessity of relocating the sign and the storm sewer drain.
It was the opinion of that expert that the highest and best use of the property is its present use, an office building. In determining value he was also of the opinion that the income approach to value was the correct one. The court agrees that the highest and best use of the subject property is its present use. Being an income or investment type property, the income or capitalization approach to value is the best method of so determining the fair market value of the subject property.
The net income for the property amounts to $42,743.60. A capitalization rate of 10% gives a value of $427,433.60 to the subject. Deducting therefrom a sewer assessment of $2256.24, the value of the property before the taking the court finds to be $425,177.36 or $425,000.00. Between land and improvements, the court allocates $254,000.00 to the value of the land and $171,000.00 to the improvements.
The major effect upon the plaintiff's property after the taking of the easement is on the parking. There existed at the time of the taking 13 parking spaces. The Wilton Zoning Regulations required a minimum of nine spaces based on the size of the building. The testimony indicates even 13 spaces makes it an extremely tight situation. The necessity of moving the buffer strip would eliminate at least two spaces making an already tight situation worse.
Using the income approach to value in the after taking the gross income less a 5% adjustment for time amounts to $44,023.00 per year. After expenses, the net income is $37,034.80. Capitalized at 10%, this gives us a value of $376,348.00. From this figure the sewer assessment of $2,256.24 and the cost of moving the buffer strip of $7,900.00 must be deducted, giving us an after taking value of $366,192.00 rounded to $366,200.00.
Based on these figures, the court finds that the plaintiff has incurred damages in the amount of $58,800.00. The court allocates $17,200.00 to the easement taken with the balance of $41,600.00 allocated to severance damages, $33,700.00 to the land CT Page 5689 and improvements and $7,900.00 to relocate the sign and reconstruct the buffer strip.
The plaintiff seeks an additional appraisal fee. An additional fee in the amount of $800.00 is awarded.
The plaintiff is also requesting interest in the amount of 10%. He makes this demand on the basis that § 37-3a of the General Statutes requires that amount be paid in the event that 10% prejudgment interest is found by the court to be just compensation.
Subsequent to the date of taking, the General Assembly adopted § 37-3c which provided for a separate rate of interest for condemnation cases. The formula therein is essentially based on treasury bills.
"The right to award interest in eminent domain actions does not depend upon statutory authority. The determination of just compensation under the Fifth Amendment is exclusively a judicial function. In condemnation cases, even in the absence of a provision for interest in the statute, the constitution requires just compensation, and its ascertainment is a judicial function. A statutory rate of interest can, however, be applied to a claim for just compensation if that rate is deemed reasonable by the court. The ascertainment of just compensation is a judicial question, the amount of interest to be paid as an additional component is also a matter for judicial determination." (Internal citations and quotations omitted). Leverty and Hurley Co. v.Commissioner of Transportation, 192 Conn. 377.
Based on equitable principles, it is the obligation of the court to award interest at a rate that amounts to just compensation. The average rate of interest on treasury bills over the past ten years is approximately 5.7%. This the court finds to be just and therefore awards interest on the amount over and above that paid into court at the rate of 5.7%.
Judgment may enter accordingly.
Curran, JTR