[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal, by application for a reassessment of damages, filed by the plaintiff for the taking of certain real property, situated in the town of West Haven and more particularly bounded and described as follows:
 Commencing at a point at the Northwesterly corner of parcel herein described, said point further being located 93.7 feet from Main Street, which line is noted as Approximate Street Line Actual Street Line Indeterminate and indicated on above referenced map, and the Westerly line of land now or formerly of John F. Carroll, Jr. as indicated on said map;
 Thence running Easterly along the Northerly line of parcel herein described and the southerly line of land now or formerly of John F. Carroll, Jr. 66.72 feet, said line being located 1.0 feet Northerly of and parallel to the existing detached building, to a point on the Westerly line of land now or formerly of John A. Chasnoff, M.D. as indicated on said map;
 Thence in a Southerly direction along the Westerly line of land now or formerly of John A. Chasnoff, M.D. and the Easterly line of parcel herein described 65.65 feet to a point on the Northerly line of land now or formerly of John A. Chasnoff, M.D. and the southeasterly corner of parcel herein described as indicated on said map;
 Thence running in a Westerly direction along the Northerly line of land now or formerly of Fishman Theaters Inc. 25.0 feet to a point as indicated on said map;
 Thence running in a Northerly direction along the Easterly line of land now or formerly of Fishman Theaters, Inc. 8.43 feet (map distance 8 feet) to a point as indicated on said map;
 Thence running in a Westerly direction along the Northerly line of land now or formerly of Fishman Theaters Inc. And the CT Page 1556 southerly line of parcel herein described 49.97 feet to a point located 100.03 feet Easterly from a point on the line indicated as 60 ft. Street Line as indicated on said map;
 Thence running Northerly along the new division line 56.48 feet, said line being located 1.0 feet Westerly of the Northwesterly corner of entrance to the existing detached building to the point and place of commencement.
 Said property is a part of the premises known as #501-511 Campbell Avenue and #340-342 Main Street, West Haven, Connecticut, said premises being described in a certain deed from Muriel L. Altschuler to the David A. Altschuler Trust, dated December 24, 1984, recorded December 28, 1984 in Volume 726 at Page 247 of the West Haven Land Records. Said deed recites that the premises known as #501-511 Campbell Avenue and #340-342 Main Street possesses the right to pass and re-pass over and upon a certain piece or parcel of land adjoining said premises on the South which land is described as follows:
WEST: by Campbell Avenue, 18 feet;
NORTH: by the premises #501-511 Campbell Avenue, 150 feet;
 EAST: in part by land formerly of Walter A. Donovan, and part by the premises known as #501-511 Campbell Avenue, 18 feet;
SOUTH: by land now or formerly of said Walter A. Donovan, 150 feet.
 The property being taken is slightly irregular in shape, rear parcel as shown on a map entitled "Property of Samuel L. Morris H., David A. Altschuler Main Street Campbell Ave. West Haven, Conn." Dated June 7, 1957 by John F. Lynch Reg. Engr. And revised 4-18-97, new division line by John A. Watson III Associates, Land Surveyors, on file in the West Haven Land Records as Map #1552,
was referred to the undersigned, a Judge Trial Referee, to view the land, take testimony of fee simple and reassess damages.
A hearing was held on April 29, 1998 and a viewing of the premises was held on May 26, 1998.
"In condemnation proceedings, the trial court is more than a trier of facts or an arbiter of differing opinions of witnesses; it is charged with the duty of making an independent determination of value and fair compensation in light of all the CT Page 1557 circumstances, the evidence, its general knowledge and its viewing of the premises." D'Addario v. Transportation Commission,180 Conn. 355, 365.
"Judge trial referees sitting as a court on appeals in condemnation cases are more than just triers of fact or arbitrators of differing opinions of witnesses. They are charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, their general knowledge and their viewing of the premises. (Citations omitted). It is their task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken." Bristol v.Milan, 45 Conn. Sup. 605, 618.
"The determination of [property] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses. . . . [T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." (Citations omitted; internal quotation marks omitted.) "[I]t is the proper function of the court to give credence to one expert over the other."
"Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his [or her] own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his [or her] own general knowledge of the elements going to establish it. . . . Ultimately, the determination of the value of the land depended on the considered judgment of the [trial court], taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties." Melillo v. New Haven,249 Conn. 138, 151, 153.
"The fair market value is the price that the trier reasonably thinks would result from fair negotiations between a willing seller and a willing buyer, contemplating the highest and best possible use of the land, giving a prudent investor the greatest financial return." CT Page 1558
"In determining fair market value, the trial court is free to select the method of valuation most appropriate to the case before it. "When, as here, the trier has visited the property to be appraised, he may rely on his visual observations to supplement the evidence presented for his consideration by the witnesses under oath." D'Addario, supra, pp. 365, 366.
The taking date was October 24, 1997. Both appraisers appraised the property as a unit. The property consisted of 4300 sq. ft., and the building was 3500 sq. ft. It was occupied by a dance studio. It had no street frontage, but may be reached by an 18 X 150 right-of-way.
The highest and best use for the premises is an industrial warehouse. It is nonconforming, in that it lacked any street frontage and the rear yard is 2 feet.
Both of the appraisers used the Sales Comparison or the Market Data approach. The defendant likewise used the Income Capitalization approach.
The building is a concrete structure which was erected prior to zoning. It has a garage door facing south, similar to that shown in the fourth comparative offered by the defendant's appraiser.
The plaintiff's appraiser offered five comparable sales, three were located in West Haven and two in New Haven. The three in West Haven were originally banks, but one has since been converted to dental offices. Of the New Haven comparatives, one is a bank and one is a two store complex.
He found the highest and best use of the property to be the present commercial use. He appraised the property to be $166,000.
The defendant's appraiser offered four comparable sales. One was in Milford, while three were in West Haven. The Milford sale is for a homeless shelter, and the three other sales were for an industrial warehouse.
He found the highest and best use to be an industrial warehouse. He appraised the property to be $80,000. Taking the rental from the dance studio, he appraised for $80,000, utilizing the Income Capitalization approach. CT Page 1559
"It must be remembered, however, that the comparison is made with lands which are similar to the land taken. Since, in fact, no two parcels are exactly alike, parcels may only be compared where the dissimilarities are reduced to a minimum and allowance made for such dissimilarities. It is, therefore, imperative to consider such differences as may exist in the physical and environmental condition and also to make a proper allowance to cover any differential that may exist by virtue of the difference in the time of the sales." Nichols, "Eminent Domain", 4th Ed., Rev. 3rd Edition, § 12B, 04[3] [Emphasis in text] [1999].
The plaintiff's appraiser admits, in his report, that he was unable to find any rear commercial building in the greater New Haven area.
"A sale of the identical property on the critical date is practically unknown in realty valuations. But an actual sale of the property near the date is sometimes found, and when it exists it is evidence of the highest order. Bonbright's Valuation of Property containing the following:
II. Actual Sales as Measures of Values
 The methods of valuation which will now be discussed is given first place, sometimes to the exclusion of all other evidence, in the legal valuation of marketable forms of property. It invokes the use of actual sales of the same property, or of closely comparable property, as furnishing, with or without correctives, the measure of value."
Haar, Land Use Planning, Chap. 5, Sec. 11 (1959) (Emphasis added.)
The subject property suffers from a number of factors. It is a rear building. It suffers from a lack of access direct frontage. The access is by way of a 18 foot by 150 foot easement. As to the bank buildings, it does not warrant the expenditures necessary. The dissimilarities have not been reduced.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, the court finds that the value of the subject property is $86,500. Damages, therefore are assessed at $6,500. The value under the Income Capitalization approach is $84,000 which is in accord. CT Page 1560
The Judge Trial Referee further finds $80,000 was deposited by the defendant with the clerk of this court for the use of the persons entitled thereto on account of the damages to be awarded, and that the deficiency between the fair value of the property and the amount so deposited is $6500; that as part of the costs in this action the defendant should pay the plaintiff reasonable appraisal fees in the amount of $2500 and reasonable fees for expert testimony in the amount of $1000, incurred in connection with this appeal.
Whereupon it is adjudged that the damages be and they are hereby assessed at $86,500, and that the defendant shall pay to the plaintiff $6500 being the amount of the deficiency as above determined, together with interest thereon from the date of the taking of the premises to the date of payment, together with costs taxed at $ ______.
Robert P. Burns Judge Trial Referee