[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1619
The plaintiffs, Michele Powers and Robert T. Powers, Jr. are the owners of property known as 463 Morgan Lane, West Haven, Connecticut. On February 18, 2000, the defendant Commissioner of Transportation (Commissioner) took a full and perpetual easement on the property of the plaintiffs in order to slope their property and a right of entry to reconstruct the driveway. The Commissioner assessed damages for said taking in the amount of $5,500.00. The plaintiffs have appealed from this assessment and seek a reassessment and interest thereon.
"The measure of damages is ordinarily the fair market value of the acquired land [or interest taken in the land] on the day of taking. Where only a part of a tract of land is taken for the public use, the award will include the value of the part taken as well as any damage visited upon the remainder as a result of the taking. The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the futurethat they may reasonably be held to affect market value. In determining the value of the remainder after a partial taking . . . it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Because fair market value has been defined simply to mean that price that a willing seller and a willing buyer would agree upon following fair negotiations an appraisal of fair market value should take into consideration that use of the property that would provide a prudent investor the greatest financial return." (Citations omitted; emphasis in original; internal quotation marks omitted). Tandet v. Urban Redevelopment Commission of City ofStamford, 179 Conn. 293, 298-9 (1979).
If the ordinary rule was to be applied to this case without consideration of injuries visited on the remaining land of the plaintiffs, the court would find that the value before the taking was $144,000 and the value after the taking was $116,000 resulting in damages in the amount of $28,000 as testified by Charles A. Liberti,[1] the appraiser for the plaintiffs. Mr. Liberti took into account that as a result of the taking the driveway was now three times the length of the original driveway and it was reconstructed in an elongated "S" shape, that it was greatly steeper and more difficult to maneuver,[2] and it exited on Saw Mill Road (a high traffic road) instead of Morgan Lane (a residential road) prior to the taking. CT Page 1620
Mr. Liberti points out that as a result of the taking, the front view from the house has substantially changed. Where the view "once . . . had a treelined street," after the taking it became a "view of a very busy and wide intersection where trucks down shift to make the turns that were not there prior to the road improvements, also . . . [there is now a view of] industrial buildings that were blocked by trees."[3] Indeed, as the plaintiff Richard Powers testified, those industrial buildings include the location of a carting company for waste materials and a "pig slaughterhouse" together with industrial security lights that illuminate his house. See, 4A Nichols on Eminent Domain, § 14A.03 [5].
This case, however, goes further than the "ordinary" case contemplated by Tandet. Other elements must be taken into account when determining the damages for the taking by the defendant. "The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. The use to be made of the land taken is to be considered with regard to its effect on the remaining land, and the fact that injuries are caused by theconstruction activities of the contractor is not a bar to recovery solong as the damages foreseeably follow such construction activities andare a necessary, natural and proximate result of the taking." (Emphasis supplied; citation omitted.) Plunske v. Wood, 171 Conn. 28, 284 (1976);DelVecchio v. New Haven Redevelopment Agency, 147 Conn. 362 (1960). (Cost of moving the condemnee's business equipment considered in awarding damages.)
The court must first address what seems to be the Commissioner's broad based argument that the court must restrict itself in this case to consideration of only the ordinary rule with respect to damages and not entertain any other element of damages for injuries visited upon the remaining property of the plaintiffs.
The Commissioner argues there was insufficient expert testimony to support the claim of the plaintiffs with respect to these damages. With respect to the injuries visited on the plaintiffs' remaining land, except for the reconstruction of the driveway, expert testimony was not necessary. The court may take "judicial notice of all matters that are . . . within the knowledge of people generally." Tait and LaPlante's Handbook on Evidence § 6.2.
Furthermore, in Connecticut it has never been held "that an award of damages in a condemnation proceeding must be within the perimeter established by expert testimony. To the contrary, [t]he purpose of offering in evidence the opinions of experts as to the value of land is CT Page 1621 to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. . . . [The referee] is charged by the General Statutes and the decisions of . . . [the Supreme Court of Connecticut] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." Bowen v. Ives, 171 Conn. 231, 239 (1976).
In order to determine damages to the remainder of the land which are the necessary, natural and proximate result of the taking, a closer examination of the Commissioner's taking is required. Not only did the Commissioner take a "full and perpetual easement to slope" in the front yard of the plaintiffs' property, but also the right to "remove, use and retain excavated material within an area of 528 square feet" in the front yard. This had the effect of causing a precipitous drop of 13 feet[4]
from the top of the plaintiffs' front yard lawn to the road. As a result, the front yard can not at present be safely used and the soil on the embankment is subject to erosion.
It is appropriate in this case to take into account the "cost to cure" or the cost of adapting the remaining land as a result of the taking. "Any expense which is reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded. The certainty or probability of future expenditures on the property rendered necessary or desirable by the changed conditions resulting from the completion of the public improvement, may affect the present value of the property after the improvement is completed, but they affect it only indirectly and are not in themselves recoverable items of damage. . . . The more accurate statement is, however, that such expenses are not recoverable as such but are evidence of elements in the decrease in market value, of which they may be an accurate measure. Cost to cure is an element to be considered in reaching a valuation only when it is no greater in amount than the decrease in the market value of the premises if left as they stood. If the cost to cure does restore the property to its former relative position, then the condemnee is not entitled to the cost of restoration in addition to an award for the difference in the before or after value." (Citations omitted; internal quotation marks omitted.) Wakeman v.Commissioner of Transportation, 177 Conn. 432, 435-6 (1979).
In order to make the front yard of the plaintiffs' home safe for use, a fence must be erected, the cost of which will be $4,499.00; Nichols on Eminent Domain, § 14A (3d Ed.) § 14A.04 [3] ("If it can be CT Page 1622 established that the most advantageous use of the remaining land is unavailable to the condemnee without a requirement to construct fencing to secure it from the proposed use of the taken portion, those costs, if independently connected to diminution in market value, may be admissible under the theory of costs to cure (whether or not the property was fenced prior to the taking).")
The Commissioner's argument that the fence should not be considered is based in part on Plunske v. Wood, 171 Conn. 280 (1976). Plunske is distinguishable from this case, in that there was no finding by the court that the injuries to the dam in that case "were a necessary, natural and proximate result of the taking." Id., 284. In this case, the court finds these injuries were the necessary, natural and proximate result of the taking. When 528 square feet of the property owners' front yard is taken causing a precipitous drop of 13 feet from the front yard to the road, that this injury to the remaining land of the plaintiffs is necessary, natural and proximate result of the Commissioner's taking is to state the obvious.
The Commissioner argues that there was no expert testimony that the fence was needed for safety reasons and the front yard could not be used without it. Expert testimony was not necessary. The view of the premises by the court (with the attorneys for the parties) sufficiently established that a fence was required for safety reasons and the reduced area of the front yard could not be safely used without it. Nevertheless, the Commissioner argues that the court should not consider the fence because "no evidence was presented by the plaintiffs to show that anyone was injured due to the slope on the edge of the front yard. . . ." There is no such requirement.
Based upon the foregoing reasoning, plantings on the slope for erosion control in the amount of $1,500 is a cost to cure that is to be taken into consideration.
The Commissioner's takings also included the "right of entry to construct driveway as more particularly shown . . . [on a map.[5]]. Said right shall terminate automatically upon completion of said work by the State." It is clear from the taking it was the Commissioner who had the obligation to construct the driveway and surely that obligation was to construct a proper driveway and not a defective drive.
The plaintiffs' expert testified that the drive that was constructed by the Commissioner was defective. The expert testified that the surface of the drive was rough, there was tearing of the asphalt, that it was improperly rolled and without a proper gravel or processed stone bed and that it would break up eventually. For the court to state that a CT Page 1623 replacement drive is a necessary, natural and proximate result of the taking is again to state the obvious.
The plaintiffs seek to have taken into consideration the cost in the amount of $8,100 for removing and repaving the entire drive. The court finds, however, that the cost to repair that portion of the drive repaved by the Commission is $5,740.00[6] and the court will consider this amount when determining the after value of the remaining property of the plaintiffs.
The plaintiffs argue that the court should take into account the temporary inconveniences and loss of enjoyment of their remaining property, and deprivation of access caused by the Commissioner's construction project. Surely the willing seller and buyer would take into consideration these temporary inconveniences.
The plaintiff Robert Powers described what he and his family endured for a three period while the court viewed a videotape he made during construction. "We had to put up with the dust and the dirt. It was horrendous. We couldn't even keep our windows open because of the dust. There was so much grease on our driveway from the heavy machinery equipment. They tried to delete the grease because the grease was coming into our house. We had to purchase a rug cleaner to clean our rugs from all the stuff coming into our house. I told them numerous times about the grease and they just tried to cover it with crushed stone.
"You could also smell raw sewage and you could see the runoff. It looks like a war zone in front of here with all of the broken pipes. Here, you could see all of the sewer runoff. There is a better picture coming up. This is the hill that they put in front of our house. This used to be flat property, fairly flat. This is the broken water pipe here. They tried to cover it with crushed stone. This is the raw sewage that you are seeing right here. This was going on for a few weeks. I had to call the Board of Health to get the DEP out here."
In addition to the foregoing, the plaintiffs were unable to have vehicular access to their property, and their water supply was cutoff which necessitated that they obtain water through a hose connected to their neighbor's water supply. In short, these conditions, some of which continued for a three month period, was simply a nightmare for the plaintiffs.
These matters are taken into account because the court finds that those conditions were the necessary, natural and proximate result of the taking. When most of the plaintiffs' front yard was taken, specifically 528 square feet of material removed, the knowledge that the contractor CT Page 1624 will break sewer and water lines should have been foreseen. When the taking included the reconstruction of the driveway, it is reasonable to conclude that the plaintiffs would be denied vehicular access to their property. D'Addario v. Commissioner of Transportation, 180 Conn. 355, 364
(1980). ("Proximate result for the purpose of eminent domain is not a criterion susceptible to precise definition in the abstract apart from the particular circumstances of particular cases. One test for proximate result is that damages will be recoverable by the condemnee only if they arise out of a loss that the condemnor could reasonably foresee as a probable result of the taking at the time of the taking.")
These additional costs and damages — the fence, the plantings, the replacement of the driveway, the addition of the turnaround, the inconveniences — are to be considered, not as separate items of damages, but are evidence of elements in the decrease in market value of the condemnees' remaining property after the taking. Wakeman v. Commissionerof Transportation, 177 Conn. supra 436. Of course, they "may also be an accurate measure" of that decrease in market value. Id.
The court concludes the market value of the property prior to the taking was $144,000.00 and the net[7] market value after the taking is $94,250.00. Accordingly, the court assesses damages in the amount of $49,750.00 for the Commissioner's taking.
The Commissioner deposited with the court $5,500.00. Accordingly, judgment shall enter for the plaintiffs against the Commissioner in the amount of $44,250.00 plus interest at the rate of eight per cent per annum from February 18, 2000 to the date of judgment. As part of the taxable costs, the plaintiffs are allowed appraisal fees in the amount of $1,300.00 and fees for other expert testimony of $250.00.
________________________________________ Robert I. Berdon, Judge Trial Referee