## MAE GENTILE ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued May 6—decided June 5, 1970

*Abraham D. Slavitt* and *Benson A. Snaider,* with whom, on the brief, was *Robert A. Slavitt,* for the appellants (plaintiffs).

*William A. McQueeney,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant).

RYAN, J. The plaintiffs have appealed from a judgment, rendered by a referee exercising the powers of the Superior Court, reassessing the damages sustained by the plaintiffs in the taking by the defendant of a portion of their property for highway purposes.

The plaintiffs assign error in the failure of the referee to find certain facts and in the finding of other facts without evidence. "These assignments of error have not been pursued in their brief and are, therefore, treated as abandoned." *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619.

The following facts were found by the referee: On June 8, 1968, the defendant highway commis-

sioner, pursuant to statute, filed a certificate of condemnation with the clerk of the Superior Court in Fairfield County and deposited the sum of $9000 to compensate the plaintiffs for the taking of 6160 square feet of land on Carson Avenue in the town of Bridgeport. The property is located in a light industrial zone not served by sanitary sewers, and the land in the general neighborhood is used chiefly for industrial and business purposes, with some residential use. The property is surrounded on the south and west by a cement block plant, and to the east by a construction company; diagonally across the street is a building supply material storehouse. The property contains a dilapidated shed and a small nondescript house which has always been used as a residence. Neither of these buildings adds any value to the land, and a plaintiffs' appraiser deducted $1200 from his land valuation for the expense of demolition. Although the Bridgeport zoning regulations permit any use permitted in a business zone, the limited area of the property restricts its adaptability for use in light industry because of the front- and rear-yard setbacks and off-street loading space requirements of the zoning laws. The plaintiffs offered two real estate appraisers who testified as to the value of the property and submitted the appraisal reports upon which they based their opinions. One of these witnesses valued the property at $20,700 and the other at $19,900. The plaintiffs also used as a witness Robert H. Wynn, who appraised the property for the defendant but was not called as a witness by him. Wynn valued the property at $15,500 and later updated his report and increased the value of the property to $19,700. All three of these appraisers predicated their valuations on the use of the property for light industry. The

defendant relied on one appraiser, William H. Ball, who valued the property at $9000 for residential use and later increased his valuation to $10,000. In arriving at their conclusions as to value, all three appraisers called by the plaintiffs as witnesses used sales which they considered comparable. Similarly zoned land located nearby on Sylvan Avenue, near North Avenue (a heavily traveled road also known as route 1), was valued by two of the witnesses at $4 a square foot and by one of them at $3.38. The subject property, located almost a full block west of Sylvan Avenue and one block north of North Avenue, is on Carson Street, which carries a moderate amount of traffic. A spur railroad track crosses Carson Street just west of Colonial Avenue at grade, causing a hump in the road. The referee was familiar with all the sites and viewed them as well as the subject property for the purpose of comparison.

The referee concluded that only the properties on Sylvan Avenue and on Island Brook Avenue were comparable, and in comparing those with the subject property, he considered the time and nature of the sales, the topography, the size of the subject lot and the limited appeal it would have to a buyer on the open market (other than the owner of the adjoining cement block plant). The referee concluded that the highest and best use of the plaintiffs' property on June 8, 1968, the date of the taking, was for light industrial purposes, and the state's assessment of damages based upon residential use of the property was contrary to reality as well as zoning; that since it was surrounded on three sides by industrial property, the land can be valued only for light industrial use, and because of its limited area, the desirability of the property for a single industry is

debatable, a fact which would be reflected in its marketability; and that the value as of the date of taking was $13,860, computed at $2.25 a square foot.

The plaintiffs assign error in the referee's refusal to permit them to introduce evidence for the purpose of establishing that the defendant acted contrary to law and the policies and procedures fixed by directives under the Federal-Aid Highway Act, 23 U.S.C. §§ 101–141. There is nothing in the record to indicate that the highway project in question, known as the "Relocation of Routes 25 and 8, Bridgeport-Trumbull Road," was part of the Federal-Aid Highway system. It is, therefore, unnecessary to discuss the federal statute and regulations referred to by the plaintiffs.

The plaintiffs also assign error in the refusal of the referee to admit evidence concerning the administrative procedure in the office of the defendant leading to the determination of the assessment of benefits and damages by him. "[S]uch an assessment 'constitutes but a formal offer to the landowner, which he may or may not accept, as a step toward payment by the State if he does accept and to the institution of proceedings in court if he does not,' inadequacy in the amount of which affords no ground for interference by the court *(Munson* v. *MacDonald,* 113 Conn. 651, 657, 155 Atl. 910) . . . ." *Stock* v. *Cox,* 125 Conn. 405, 418, 6 A.2d 346. "Under article first, § 11, of the Connecticut constitution, no property shall be taken for a public use without just compensation. This means a fair equivalent in money for the property taken from the condemnee as nearly as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a

strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken. *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592; *Nicholson* v. *Weaver,* 194 F.2d 804, 807 (9th Cir.)." *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340. In the event the landowner believes that the amount of the assessment is too low, he is not bound to accept it. The issue before the referee was the fair value of the subject property. The referee correctly concluded that evidence relating to the administrative procedure by means of which the commissioner's assessment was arrived at was irrelevant.

The plaintiffs also sought to introduce evidence to establish the "registered value" of the property as determined by a review board. The plaintiffs claim that this constituted an admission of the value of the property by the defendant. The conclusion of a review board is not that of the defendant and cannot under any circumstances be regarded as an admission by him. Since the issue before the referee was the fair value of the subject property, any administrative evaluation merely represents the opinion of persons whose qualifications for evaluating the property are unknown to the referee. Under § 13a-73 (b) of the General Statutes, the defendant commissioner shall make an assessment of benefits and damages which is the price offered to the plaintiffs as compensation for their property. On appeal, the question before the referee is not what the defendant offered to the plaintiffs nor what the plaintiffs claimed was due them, but rather the actual fair value of the property as determined at the hearing. The referee was correct in excluding such evidence.

In this state the judicial review provided for under our statutes is designed to ensure that the condemnee receives just compensation for his property. In *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 95, 230 A.2d 9, we held that the trial court did not abuse its discretion in ordering the mutual exchange by the parties of the appraisal reports for inspection and copying. In *Thomaston* v. *Ives,* 156 Conn. 166, 173, 239 A.2d 515, we held that in an eminent domain proceeding initiated by the state "justice is best served . . . by requiring the appraiser [employed by the state] to testify to his expert opinion when called upon to do so" by the landowner even against the objection of the state. In that case we emphasized that "[t]he only question in issue is the fair value of the property seized. The single objective of the present proceeding is to ensure that the property owner shall receive, and that the state shall only be required to pay, the just compensation which the fundamental law promises the owner for the property which the state has seen fit to take for public use. All material and relevant information which will assist the trier in determining the sum of money which will constitute that just compensation should, in justice to both parties, be made available to him." Id., 174. With that purpose in mind, the following rule was adopted in 1967: "In making a reference in any eminent domain proceeding, the court shall fix a date not more than sixty days thereafter, unless for good cause shown a longer period is required, on which the parties shall exchange copies of their appraisal reports . . . . Such reports shall set forth the valuation placed upon the property in issue and the details of the items of, or the basis for, such valuation." See Practice Book § 352.

In the instant case the trial court ordered the exchange of appraisal reports. The plaintiffs not only received the appraisal reports of the state's experts but called one of its experts as their witness. The plaintiffs' rights were adequately protected, and there is no justification for the plaintiffs' claim concerning lack of protection against "witness shopping" by the state. Furthermore, under our statutes the state is penalized if the assessment undervalues the property taken. "The landowner is entitled to interest at the legal rate of 6 percent (General Statutes § 37-3) from the date of the filing of the assessment to the date of payment, as a proper element of damages . . . [except that] the landowner is not entitled to interest on any sum of money which has been deposited with the court and is available to him." *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 212, 214, 177 A.2d 673; *E. & F. Construction Co.* v. *Ives,* 156 Conn. 416, 420, 242 A.2d 768. The claim of the plaintiffs that the defendant acted contrary to law and the policies and procedures of statute cannot be sustained.

The plaintiffs also assign error in the referee's evaluation of the subject property in the amount of $13,860, computed at $2.25 per square foot, when no evidence was offered at the hearing as to that amount. The referee determined that the highest and best use of the property was for light industrial purposes. Three experts called by the plaintiffs evaluated the property at $19,700, $19,900, and $20,700 on the basis of comparable property sales. The defendant relied on one appraiser, who valued the property at $9000 for residential use and later increased his valuation to $10,000. The plaintiffs urge that there was no witness whose appraisal valued the property at the figure used by the referee.

They concede that in arriving at his conclusion of value the referee is not bound by the opinions of the experts, in that he need not fully accept the report of any expert. They claim, however, that the conclusions of the referee were not supported by competent evidence. "The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747. Ultimately, the determination of the value of the land depended on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. . . . *Benson* v. *North Haven,* 126 Conn. 506, 510, 12 A.2d 551." *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612.

In the instant case, the referee accepted the opinion of the plaintiffs' witnesses that the highest and best use of the plaintiffs' property was for light industrial purposes. The experts, in arriving at their valuations, used sales of other real estate which they regarded as comparable to the subject property. In arriving at the fair value of the property, the referee disregarded some of the sales of property located several blocks away from the subject property because they were not truly comparable. As to other sales used as comparables by the experts, he considered the time and nature of the sales, the superior location of the comparables to that of the subject property, the topography, the

size of the plaintiffs' lot, and the limited appeal it would have to a buyer on the open market. The referee concluded that because of the limited area of the subject property its desirability for a single industry is debatable and that that fact would be reflected in its marketability. The referee viewed all the properties. "We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact supplemental evidence." *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176.

The plaintiffs urge in their brief that the referee failed to put any value on the improvements on the property which consisted of a small nondescript house and a dilapidated shed. The referee found that neither of these structures added any value to the land. The plaintiffs' appraiser deducted $1200 from his land valuation for the demolition of these structures. On these facts it was not erroneous for the referee to conclude that the structures added nothing to the value of the land for industrial purposes.

There is nothing to show that in determining the value of the plaintiffs' land the referee misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was his duty to regard. *Bennett* v. *New Haven Redevelopment Agency,* supra; *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641.

There is no error.

In this opinion the other judges concurred.