[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is appeal from an assessment of damages by the plaintiff City of New London (City) by the State of Connecticut (State) through its Department of Transportation (DOT) for a partial taking[1] of land on July 31, 1989 together with perpetual slope easement and a right to install a sedimentation control system. The right to install the sedimentation system will terminate automatically of the DOT work. The premises involved are located on the southeasterly side of present Conn. Route #437 and were necessary for the layout, alteration, extension, widening, change of grade and improvement of Route #437 and Bridge No. 01607. The appeal was referred to the undersigned for hearing and judgment. The hearing has been held at which the only witnesses were an appraiser for each of the parties and at which certain exhibits, including the written appraisal report of each was admitted into evidence. Thereafter, the court viewed the subject premises in the presence of counsel. As set out hereinafter the court, which finds the plaintiff City aggrieved, has concluded that the City is entitled to additional damages in the amount of $14,919.00.
The City's property before the taking was comprised of about 5.022 acres and is triangular in shape. Thomas Griffin Road and State Pier Road are roads upon which this property had a before and after taking frontage of 467.76 feet, more and less and 687 feet more or less respectively. The land was all vacant. It is bounded on the north by State Pier Road, and land now or formerly of the National Railroad Passenger Corporation, on the southwest by Thomas Griffin Road and on the southeast by the Central Vermont CT Page 3343 Railroad. It is entirely vacant land, is cleared and its recent uses have been for parking and steel storage. There is a large ledge outcropping at the intersection Thomas Griffin Road and State Pier Road. The portion of the subject property taken is to be used in the construction of an overpass over the railroad tracks as well as to redirect the highway at either end of the overpass. As the City's expert puts it "the net effect is that the road will be moved slightly and straightened." The site is mostly level sloping slightly from this intersection of the two roads to its southeast bound on the Central Vermont Railroad where it drops off sharply to the railroad tracks. The site is located entirely in the LI-D, Light Industrial Office District Zone[2]. The utility services available to this site include electricity, telephone, sanitary sewer and water. The water service, however, is limited due to the size of the main.
The neighborhood of the site is of mixed use including industrial, commercial and some residential and office use. It tends to be mostly industrial and commercial with a distributing, shipping and warehousing milieu. This area is just south of a major interchange with I-95 and Route 32 and the Gold Star Bridge over the Thames River is close by. The Thames River is just off to the east of the neighborhood of the site. State Pier Road accommodates traffic to the dock area where the State Pier is a major off loading point for goods. The Central Vermont switching yard is in the neighborhood area. There's a small office/industrial building generally westerly of the site. There are some single family houses as well as low income apartment buildings in the area.
The City of New London is located on the north side of Long Island Sound and on the west side of Thomas River. Its economy is directly related to its waterfront location and it is strongly oriented toward water activities and industries. The United States Navy, Electric Boat Division of General Dynamics, Pfizer Corporation and the United States Coast Guard figure prominently in the economic and military environment of the area.
Each party presented evidence through a qualified appraiser, each of whom had in turn prepared a detailed appraisal report which had been exchanged before the trial. Christopher Miner and Jerry Adkins were the appraisers for the plaintiff and the defendant respectively. Both expressed different opinions of fair market value in the before and after situation as to value. Both, however, utilized the direct sales comparison approach in their opinions of the value of the subject property.
Miner's opinion was the fair market value of the property before the taking was $875,000. and that the values after the taking was $745,000. for damages of $130,000. It was his opinion CT Page 3344 that the highest and best of this property both before and after the taking is as an office site.
Adkin's opinion was that the fair market value of the property before the taking was $547,000. and that value after the taking was $466,000. for damages of $81,000. It was his opinion that the highest and best of this property, is as a single story, multi-tenant, flex/industrial building.
At this point it is useful to set out certain legal principles involved in this appeal. The state cannot take the plaintiff's property without paying it just compensation for the taking. See e.g. Gentile v. Ives, 159 Conn. 443, 447, A.2d (1970). "The question of what is fair compensation is an equitable rather than a strictly legal technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily as he would have been had the property not been taken." Gentile v. Ives, supra 447-448 quoting from Colaluca v. Ives, 150 Conn. 521, 530, 191 A.2d 340 (1963);
 "When only a part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and recovery from any damages visited upon the remainder which result from the taking. Bowen v. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. Highway Commissioner, 169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebvre v. Cox, 129 Conn. 262, 265, 28 A.2d 5."
D'Addario v. Commissioner of Transporation, 172 Conn. 182, 184-185,374 A.2d 163 (1976). Thus, "also considered are any and all damages which will foreseeably follow from the proper construction of the project, including any and all damages to that remainder which are a necessary rational and proximate result of the taking." Wakeman v. Commissioner of Transporation, 177 Conn. 432, 435, 418 A.2d 78
(1979); Nichols, Eminent Domain (3d. Ed.) 14, 24, 14.243, 14.2431.
Valuation is a question of fact "to be determined by the CT Page 3345 trier's independent judgment of what is just compensation. D'Addario v. Commissioner of Transportation, 180 Conn. 355, 369.429 A.2d 890 (1980). "The purpose of offering in evidence the opinions of experts is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. . . . Ultimately, the determination of the value of the land depend[s] on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. . . ." Bennett v. New Haven Redevelopment Agency, 148 Conn. 513, 516, 172 A.2d 612 (1961); see Gentile v. Ives, 159 Conn. 443, 451, 270 A.2d 680 (1970).
The referee is the final judge of credibility of witnesses and the weight to be given their testimony. Morgan v. Hill,139 Conn. 157, 161 A.2d (1952). In this process the "trier's acceptance and use of the testimony on some points does not preclude its rejection on others." Morgan v. Hill, supra 162. The opinion of any expert is not binding on the court. Birnbaum v. Ives, 163 Conn. 12, 20, 30 A.2d 262 (1972). The visual observations made by the trier in a visit to the property is just as much evidence as evidence presented for his consideration under oath. Birnbaum v. Ives, supra.
In determining fair market value, see Gebrian v. Bristol Redevelopment Agency, 171 Conn. 565, 571 370 A.2d 1056 (1976); Connecticut Printers Inc. v. Redevelopment Agency, 159 Conn. 407,410, 270 A.2d 549 (1970); Mazzola v. Commissioner of Transportation, 175 Conn. 576, 581-582, A.2d (1978), both expert witnesses used the market data comparable sales approach to value. As no two pieces of land are ever exactly alike, it must b remembered that the comparison is made with land which is similar to that taken and accordingly no general rule can be laid down regarding the degree of similarity. Nichols Eminent Domain 21.3[1], 21.31; 27 Am.Jur.2d Eminent Domain 1429, p. 433 (2d ed 1966). The more comparable, however, the comparables advanced, the more probative they are of fair market value of the subject. United States v. 826.0 acres of land. 605 F.2d 762, 798 (5th Cir. 1979); 5 Nichols, Eminent Domain, 21.3[1]. Further explication may be found in 5 Nichols, Eminent Domain 18.11 where that commentator states:
 [T]he value which the law recognizes is the fair market value, taking into consideration any and all uses to which the land is reasonably adapted and might with reasonable probability be applied.
Any evidence of such value, therefore, which CT Page 3346 is competent under the general rules of evidence, and which is material and relevant to the question of value may be admitted.
While comparable sales is one of the most reliable methods of determining fair market value, see e.g. United States v. 2,500.00 acres of land, 436 F.2d 498, 402 n. 2 (10th Cir. 1988). L'Etoile v. Director of Public Works, 89 R.I. 394, 153 A.2d 177 (1989) State ex rel Highway Commission v. Jasper, 544 S.W.2d 554 (1976), its most appropriate utility must consider all significant factors affecting comparability which include among others: location and character of the property, proximity in time and location, the use to which the property's put, size, adaptability, zoning and available utilities. See 5 Nichols Eminent Domain 21.3, 21.31; Campbell v. New Haven, 101 Conn. 173, 125 A. 650 (1924). It is for the fact finder to determine whether the claimed comparables are in fact comparable, and if found comparable, to determine the weight to be accorded thereto. United States v. 84.4 Acres of Land, Etc. 348 F.2d 117, 119 (3d Cir. 1965); United States v. 67.59 Acres, 447 F. Supp. 844, 846 (M.D. Pa. 1978); see E.B.F. Realty v. Department of Transportation, 173 Conn. 247,377 A.2d 302 (1977).
In employing the comparable sales approach to value Miner used four properties, two in Waterford, one in Groton and one in East Lyme[3]. He did so he said because there were no sales of similar properties in New London. Adkins likewise could find no similar properties in New London and for his comparables he utilized three properties in Waterford, all of which was located in the same industrial park development. The credible evidence as to the zoning of the City's comparables yielded little specific honing in on specific uses in those zones vis a vis the city's claim of subject's highest and best use. In another of the City's comparables, i.e. Avery Lane in Waterford, the zoning was very restrictive, the parcel so small (.73 of an acre) and the estimated demolition cost of an existing improvement therein so unsubstantiated that its offer as a comparable has very little probative value. The State's comparables, on the other land, were all in the same zone in Waterford and this is not surprising because all were on the same industrial park. Two of the state's comparables were devoted to a light industrial use of the flex/industrial type, which is similar to the highest and best use urged by the State for the subject. While other utilities are available none of the State's comparables have sewers while three of the City's four comparables (except the East Lyme property) have sewers available as well as other utilities. The State concedes that the availability of sewers is an asset to the subject which the latter has as well as electricity, telephone and water. Water service, however, to the subject is limited due to the size of the main. The State's comparables are about five CT Page 3347 miles from the subject and are adjacent to Interstate 395 which, it must be pointed out, is a different highway from Interstate 95. Some of the City's comparables, particularly those in Groton and Waterford (on Boston Post Road) appear to be much nearer to the subject.
Both appraisers also considered adjustments not only to zoning on their comparables inter alia but also for time, size, topography. From the evidence, Including the view by the court, the topography of the subject appears to be of a high order except as to a portion at the intersection of State Pier Road and Thomas Griffin Road where there is a large ledge outcropping. Overall, however, the topography and size of the subject as well as its frontages on two roads, the state itself concedes, "offer a potential developer a wide flexibility of uses at reasonable costs." Its proximity to Interstate 95 is a positive factor for the subject as is its frontage on two highways as already noted. The court, however, cannot agree that, as the City maintains, that the highest and best of the subject is as one parcel both before and after the taking is development as an office site. Despite the claim of a lack of office space in New London, the subject property has been owned by the City for about twenty years and there is no credible evidence that the site, or any part of it, has been the subject of any proposed development as such. When Miner was asked in cross-examination about his position that there was a lack of office space in the City, he candidly said that he meant that there was no new buildings "coming up". Assuming that there is very little if any land in the City for the highest and best use it now advances, the credible evidence yielded no explanation as to why the subject has not been so developed. The court with the state agrees that the highest and best use of the subject property is as a single story, multi-tenant flex/industrial building.
After considering those properties considered comparable to the subject and making the adjustments to them deemed appropriate each appraiser arrived at a conclusion of the value per square foot to be used in their respective before and after values of the subject from their respective opinions of its highest and best use. Miner's figure was $4.00 per square foot and Adkin's figure was $2.50 per square feet. On the law and the credible evidence, including its view, the court has determined upon the figure of $3.00 per square foot which interpolates into a before taking fair market value of $656,274.00 and an after taking fair market value of $560,355.00. This, in turn, yields the sum of $95,919.00 as damages. The State has already paid into court $81,000.00 and the City has moved for and been paid that sum. Therefore, the balance due the City of New London is $14,919.00 plus interest thereon justly due the City of New London from the taking date of July 31, 1989. CT Page 3348
In addition the plaintiff claims $2,500.00 for Miner's appraisal fees. The reassessment of damages exceed the amount of the damages awarded by the state through its Commissioner of Transportation and, therefore, the plaintiff is entitled to such I of appraisal fees as the court finds reasonable. The court finds the amount requested is reasonable and $2,500.00 is allowed for its appraisal fees.
The appeal is sustained and judgment may enter in accordance with the foregoing.
Arthur H. Healey State Trial Referee
FOOTNOTES