[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 18, 1989, the plaintiffs were the owners of a parcel of land in the Rockville section of Vernon. On that day,[1] pursuant to the provisions of Conn. Gen. Stat. sections 13a-73 and 13a-98e, the defendant acquired by condemnation: (a) 0.040 of an acre[2] (the Condemned Area) of the plaintiffs' land and (b) three rights (the Rights) to do certain work (e.g., constructing a driveway, installing a catch basin, and removing metal beam rails) on 0.017 of an acre of the plaintiffs' land. The Rights terminate upon completion of the work.
The plaintiffs' land is on the north side of Union Street, about 103 feet east of the intersection of West Street and Union Street. The maps in evidence and the reports of the appraisers differ slightly in their computations of the area of the plaintiffs' land and the area of the Condemned Area, which bounds Union Street. The court finds, from the copy of the deed to the plaintiffs that is part of Exhibit F, that before the defendant acquired the Condemned Area, the plaintiffs' land consisted of 33,027 square feet. The court further finds that the Condemned Area consists of 1742 square feet. On the plaintiffs' land, about 60 feet north of the north line of the Condemned Area, is a one-story building of about 1845 square feet, used for a restaurant business. That use of the plaintiffs' land, which is in a Residential-Commercial (R C) Zone, is a use for which a special permit is required, and that permit has been obtained. A continuation of that present use is the highest and best use for the plaintiffs' land.
 I
By an appeal dated June 12, 1990, as amended by an amendment dated July 21, 1991, the plaintiffs appealed from a Statement of Compensation that the defendant had filed on December 18, 1989, regrading compensation for the defendant's condemnation of the Condemned Area and the Rights. That Statement of Compensation determined that $22,350 is the amount of damages sustained by the plaintiffs as a result of the condemnation. In their appeal, the plaintiffs allege that $22,350 is CT Page 9033 inadequate compensation for the Condemned Area and the Rights. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court heard testimony and received a report from the appraiser for the plaintiffs and the appraiser for the defendant; heard testimony from, and received in evidence maps prepared by, engineers; heard testimony from one of the plaintiffs, from the Town Planner for Vernon, and from several other witnesses. The court also had the benefit of viewing the premises and of the briefs submitted by the parties on October 8, 1991.
 II
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I sec. 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford,167 Conn. 67, 73, 355 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation, 211 Conn. 382, 384, 559 A.2d 216 (1989). The plaintiffs claim that those values should be computed according to the "income approach," which uses capitalization of net income as a basis of valuation. See Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669,673, 154 A.2d 608 (1959). The "income approach" is used, however, when there have been no recent comparable sales. Id. "Fair market value" means "the figure fixed by sales in ordinary business transactions, and [it is] established when other property of the same kind in the same or a comparable location has been bought and sold in so many instances that a value may reasonably be inferred. (citation omitted). In other words, the best test is ordinarily that of market sales. (citations omitted). Where evidence of such sales is not available, other means must be employed to ascertain the present true and actual valuation."" Sibley v. Middlefield,143 Conn. 100, 106, 120 A.2d 73 (1956). As the report of each appraiser shows, in the present case there have been recent comparable sales, and there is no need to use "other means" to ascertain either the before- taking or the after-taking value of the plaintiffs' land. Parenthetically, the court notes that there was a lack of the precise evidence necessary to establish the critical facts constituting the foundation for the use of the "income approach." See Burritt, supra, at, e.g., 676 (capitalization rate is "the most difficult element" to determine.)
The appraiser for the defendant was called as a witness by the plaintiffs, as permitted by our procedure. See Gentile v. Ives,159 Conn. 443, 449, 270 A.2d 680 (1970) and Thomaston v. Ives,156 Conn. 166, 173, 239 A.2d 515 (1968). He testified, in accordance with his report, that his opinion is that the before-taking value of the plaintiffs' land was $10.50 per square foot, and the court concurs in that opinion. Accordingly, the court finds that the before-taking value of the plaintiffs' land was $346,783. He further testified that his opinion is that $4100 is the value of miscellaneous improvements (a sign, bushes, and landscaping) that were removed in the course of the construction work, and the court concurs CT Page 9034 in that opinion also. Accordingly, the court finds that the before-taking value of the plaintiffs' land and the miscellaneous improvements was $350,883.
In appraising the value of the Condemned Area, the appraiser for the defendant multiplied $10.50 by 1742 and valued the Condemned Area at $18,291. The court is of the opinion, however, that the per square foot value of the Condemned Area is significantly higher than the average per square foot value of the entire parcel. As the appraiser for the plaintiffs notes in his report, "At the rear of the building, the site drops off to an elevation approximately five feet below the street grade and is wooded. This area is unimproved and is not considered by your appraiser to be a good area for parking." (Ex. F. p. 4.) The appraiser for the plaintiffs is of the opinion that the before-taking value of the Condemned Area is $13.00 per square foot; the court concurs in that opinion. The court finds that the before-taking value of the Condemned Area is $22,646, to which is to be added $4100 for the value of the miscellaneous improvements. The court finds, accordingly, that the value of the plaintiffs' land was diminished in the amount of $26,746, as a result of the taking of the Condemned Area and the miscellaneous improvements, independent of and in addition to any severance or Rights-damages the plaintiffs may have sustained as a result of the taking.
 III
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany v. Commissioner of Transportation, 215 Conn. 437, 444, 576 A.2d 503 (1990). The appraiser for the defendant is of the opinion that the plaintiffs sustained no severance damages. The appraiser for the plaintiffs, however, in his report expressed the opinion that there were additional damages in the amount of $105,500, an amount that was slightly modified during the course of the trial. His report states, "(Y)our appraiser is of the opinion that the loss of twelve parking spaces at the front of the building creates a substantial loss of value of the entire property. As a result, your appraiser is of the opinion that in addition to the physical loss to the site, there will be a significant loss of value to the entire remaining property." (Ex. F. p. 16.)
This conflict in opinions makes it necessary to review the evidence concerning the effect of the taking of the Condemned Area on the availability of parking spaces in the remaining area. The Condemned Area ranges in width from about six feet to about 10 feet, and, for those widths, constituted the entire 182.2 feet of frontage of the plaintiffs' land on Union Street. The before-taking space available for parking along the frontage, after deducting the space required for the CT Page 9035 driveway-entrance, accommodated ten automobiles parked at right-angles to Union Street. A zoning regulation that had been in effect since 1974, at least, required a set-back of ten feet from the street line. The defendant offered evidence in support of his claim that the before-taking frontage-parking was a violation of that set-back regulation.
Probably because the frontage-parking had been going on for more than eight years, the evidence was inconclusive on the question whether the before-taking frontage-parking was a violation of the set-back regulation, or whether it complied with the regulation, or whether it was a permitted non-conforming use. The evidence established, however, that the zoning officials of Vernon had not objected to the frontage-parking at any time. The evidence also established that there is a high probability that a variance will be granted, if one is necessary to permit the continuance of the frontage-parking. The Town Planner for Vernon testified that the probability of the Zoning Board of Appeals approval would be in the "ninety-plus percent" if something took place that was beyond the property owner's control, and also that the Zoning Board of Appeals "appears to take a very different view" of "properties that have been in existence for a long time such as this one."
Connecticut cases also take the same "very different view" when the need for the variance arises out of conditions over which the owner has no control, such as a condemnation. See Smith v. Zoning Board of Appeals, 174 Conn. 323, 328, 387 A.2d 542 (1978); see, also, Archambault v. Wadlow, 25 Conn. App. 375, 382, ___ A.2d ___, (1991) (nonconformity arising out of zoning regulations not a hardship created by landowner). Even if the before-taking frontage-parking were a violation of the zoning regulations, that would not foreclose the court from finding that the granting of a variance is highly probable. "The fact that parcel 1 had been devoted to an unlawful use after 1961 did not prevent the trier from considering the probability that the legal prohibition would have been removed had that been requested." Lynch v. West Hartford, 167 Conn. 67,75, 355 A.2d 101 (1974). The court finds that there is a high probability that any variance necessitated by the taking of the Condemned Area will be granted. "It cannot be doubted that both a prospective purchaser and a seller in the open market would consider the probability of a change in zoning restrictions affecting property which they considered buying and selling where such change was reasonably probable in the reasonably near future." Budney v. Ives, 156 Conn. 83, 88, 239 A.2d 482 (1968)."The true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. . .' A purchaser in a voluntary transaction would rarely pay the price the property would be worth if the amendment were an accomplished fact. No matter how probable an amendment may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restriction of the existing ordinance.'" Budney, supra, at 89. Although the case cited refers to a change in zone, CT Page 9036 the same reasoning applies where it is necessary for the buyer to obtain a variance in order to continue a use, such as parking, that represents an increment to the value of the property being considered for purchase.
The evidence establishes that continuing the before-taking frontage-parking on the plaintiffs' land violates the ten-foot set-back regulation. That fact, with its attendant need for a variance, diminishes the value of the remaining land and causes severance damages to the plaintiffs. In evaluating the amount of those damages, the court reviewed the principles of law set forth in Budney, supra, and has considered the relevant testimony, exhibits, facts disclosed by the court's view of the premises, and the briefs of the parties, all particularly with regard to the frontage-parking and to other space that might be available as replacement parking. On the basis of that review and that consideration, the court makes the following findings with respect to severance damages: (A) The "as is" (i.e. without the required variance) value of the after-taking remaining land is computed by deducting from the before-taking value of the plaintiffs' land, and the miscellaneous improvements, ($350,883), the value of the Condemned Area, and the miscellaneous improvements, ($26,746). This computation shows the before-taking "as is" value of the remaining land to be $324,137. (B) The remaining land totals 31,285 (33,027 less 1742) square feet. (C) The before-taking "as is" average per square foot value of the remaining land is, therefore, $10.36.(D) Because frontage-parking can no longer be validly continued, in view of the 10-foot set-back requirement, the "after-taking" average per square foot value of the remaining land, adjusted to reflect the lower value caused by the loss of frontage-parking, is $10.00. (E) The "premium" for the high probability that the required variance will be granted is 15 cents per square foot over the "as is" value per square foot, making the after-taking value of the remaining land (with the "premium" added) $317,542. (F) As computed in (A) above, the "as is" before-taking value of the remaining land was $324,137. (G) The difference between the "as is" before-taking value of the remaining land ($324,137) and the after-taking value of the remaining land, with the premium" added, ($317,542) is $6,595. (G) The plaintiffs have sustained severance damages of $6,595, independent of and in addition to any other damages sustained.
 V
No evidence was presented concerning damages sustained by the plaintiffs as a result of the exercise of the Rights, and the court makes no award with respect to that item. Accordingly, the court finds that the plaintiffs have sustained total damages of $33,341, of which damages of $26,746 result from the taking of the Condemned Area and the miscellaneous improvements, and damages of $6,595 are severance damages.
 VI
The defendant filed a "Request for Leave to File a Corrected CT Page 9037 Brief," which was received at the Clerk's Office on October 18, 1991. The court also received a copy. The court denies the "Request" on the grounds, inter alia, that it was not seasonably-filed and that it is incompatible with the order entered by the court concerning the filing of briefs.
 VII
The damages awarded to the plaintiffs exceed the amount of the assessment of damages by the defendant, and, pursuant to the provisions of Conn. Gen. Stat. sec. 13a-76, the court awards to the plaintiffs reasonable appraisal fees of $2500. The statute does not provide for an award of witness fees, and none are awarded.
 VIII
In sum, the court finds that the plaintiffs have sustained (a) damages of $26,746 as a result of the defendant's taking 0.04 of an acre of the plaintiffs' land, and (b) severance damages of $6,595 as a result of the taking — caused diminished fair market value of the plaintiffs' remaining land. The court finds that the after-taking fair market value of the plaintiffs' land is $317,542 and that the before-taking fair market value of the plaintiffs' land was $350,883, and that, therefore, the after-taking fair market value of the plaintiffs' land is $33,341 less than the before-taking fair market value of the plaintiffs' land. Judgment may enter, therefore, for the plaintiffs to recover from the defendant damages in the amount of $33,341, less, however, the amount of $22,350 already paid, leaving an excess of $10,991, plus statutory interest, which the court finds is fair, just, and reasonable, from the date of taking to the date of payment of the judgment debt, and plus reasonable appraisal fees of $2500, and costs.
Rubinow, State Trial Referee