NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JENNIE ENGSTROM, PETITIONER, v. JOSEPH NICHOLS, RESPONDENT.

Decided May 17, 1940.

For the petitioner, *Elias G. Willman.*

For the respondent, *Bartholomew & Dwyer* (by *William J. Bartholomew*).

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The petitioner alleged in her petition that on November 30th, 1939, while decedent was working on the roof of a

house, which respondent had contracted to repair, he fell off and later died as a result of the injuries sustained. She further alleged that the decedent was in the regular employ of the respondent at an average weekly wage of forty ($40) dollars.

The respondent admitted that the petitioner's husband was injured and subsequently died in the manner alleged in the petition; but affirmatively pleaded that the decedent's employment was that of independent contractor within the meaning of the phrase as used in the Workmen's Compensation act of this state, and hence was not compensable because the Workmen's Compensation Bureau was without jurisdiction.

At the time of the hearing it was stipulated between counsel for the respective litigants that decedent was injured while working on the repair of a roof under a contract secured by the respondent and subsequently died as a result of the injuries sustained. It was further stipulated between counsel that the controlling question was whether the decedent's employment came within the purview of the act, in view of the defense of independent contractor affirmatively pleaded by the respondent. That question was the primary one submitted to me for determination.

The petitioner took the stand and alleged that the respondent had employed her husband on a weekly basis; substantial proof of this allegation, however, was notably lacking. On the contrary, it was rather clearly demonstrated, through Joseph Heon, the only other witness for the petitioner, whose testimony appeared pertinent to the issue, that the decedent was paid by the number of square feet he applied. The witness, on cross-examination, stated that the decedent supplied his own equipment, including the scaffolding, ladders, tools and brackets—that the decedent had hired him to assist as a helper and that the respondent did not direct the decedent in the manner in which the work should be done. In the course of the cross-examination of this witness it was further revealed that he acted as helper for the decedent on numerous other "jobs" with which the respondent had no connection.

One other witness testified on behalf of the petitioner but his testimony shed little or no light on the question at issue.

Aside from having seen the respondent at the home of the decedent on a few occasions he knew nothing concerning any relationship between the two people.

The respondent convincingly testified to the following: that the decedent's services had been used by him on at least three or four occasions but as an independent contractor, that he paid decedent by the number of square feet on the "job" to be done, that the decedent supplied his own equipment to perform the work, and that he hired whatever assistants he needed and paid them out of the contract price which was agreed to before the work commenced. Respondent further testified that he did not attempt to direct the manner in which the roof should be applied for he had no technical knowledge concerning the application.

It seems to me that the respondent was a creature of the Federal Housing Administration legislation. Prior to its enactment, and, for that matter for some time subsequent thereto, he was in no way connected with construction in any of its aspects. After the act came into being he became aware of the possibilities of convincing home owners to use the credit method established by the act in refurbishing their homes. To this end he applied himself with the result that for at least two years next preceding the contract herein mentioned he acted as a "dealer" in arranging at least seventy-five or more contracts. Of this number, though the decedent was one of the best applicators in the trade, the respondent used him on not more than four occasions. (The decedent's services were apparently in demand and he was not always available.) The respondent had no employes, no office other than his home and had no facilities usually possessed by a common employer.

There were two other witnesses who testified on behalf of the respondent. They were disinterested witnesses. In fact, the son of the home owner, where the roof was being applied, testified that he was given a business card of the decedent's with the statement that the decedent was in the same business as the respondent and could do jobs cheaper. The other witness, a Mr. Heuneman, testified that the decedent had been hired by him on occasions and that the method of payment was always by the number of square feet in the job.

A significant bit of testimony given by the respondent and which went not only unchallenged by the petitioner, but in fact substantiated by Joseph Heon, was to the effect that the respondent came to the job in Newfoundland, stayed for a short period of time and left leaving the decedent to proceed with the work independent of any direction or supervision from the respondent.

In the case of *LaTerre* v. *Skillman,* 7 *N. J. Mis. R.* 766, the deputy commissioner repeated the fundamental rule so often enunciated that:

"The manner of making payment for services rendered does not establish whether or not one is an independent contractor. According to the cases, it is purely a question of supervision."

Likewise, in the case of *Otmer* v. *Perry,* 94 *N. J. L.* 73; 108 *Atl. Rep.* 369, Mr. Justice Minturn said:

"The work which the petitioner contracted to perform in this instance, was of a distinct and specific character, in the execution of which he was unhampered and uncontrolled by the views and orders of an immediate superior, and when the work was executed the relationship of the parties arising out of the contract was at an end,"

And further:

"In that fact inheres the distinction which differentiates the work or employment of the ordinary servant from that of an independent contractor."

And in the case of *Hart* v. *Kimball,* 122 *N. J. L.* 217; 4 *Atl. Rep.* (*2d*) 493, the Supreme Court held, on a set of facts very much similar to those in the instant case, that: "defendant's business was selling materials (and service) and not applying them, whereas prosecutor in conjunction with his brother was engaged in the contracting business doing this very sort of work * * *."

I find from the testimony and determine that the decedent's employment which covered the accident of November 30th, 1939, and subsequent death, was that of an independent contractor within the meaning of the phrase "independent contractor" as set forth in the act, because the said employment and the work done pursuant thereto at the time of the

accident was not under the control, supervision or direction of the respondent. I am, therefore, constrained to dismiss the petition.

It is, * * * ordered, that the petition filed in this cause be and the same is hereby dismissed, and judgment entered in favor of the respondent.

JOHN C. WEGNER,
*Deputy Commissioner.*