[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF COMMITTEE
The Iroquois Gas Transmission System L. P. And Iroquois Gas Transmission System of Connecticut, Inc. (Iroquois) filed a petition with the Superior Court for the Judicial District of Ansonia/Milford seeking to determine fair compensation for a natural gas pipeline easement pursuant to Connecticut General Statutes § 16-266.
 "If any such corporation and the person or persons to whom damages may arise from any taking under the provisions of sections 16-263
to 16-269, inclusive, of any land, right of way, easement or other interest in land are unable to effect an agreement on the amount of such damages, such corporation may prefer a petition to the Superior Court for the judicial district in which the property lies . . . . . praying that such compensation may be determined . . . ."
Connecticut General Statutes § 16-266.
The respondents Leonard and Irene Kopjanski (Kopjanski's) are CT Page 6754 the owners of the subject property which is located at 31 Maple Avenue in the City of Shelton.
Pursuant to § 16-266 supra, the undersigned committee of disinterested persons have been appointed by said court.
 ". . . . to view the property in question, hear the evidence, ascertain the value, assess just damages to the owner or owners of such property and report its doings to such court or judge . . . . ."
Connecticut General Statutes § 16-266
The undersigned a committee of disinterested persons, appointed by the Superior Court for the Judicial District of Ansonia/Milford, hereby file this report with said Court.
The petitioners, Iroquois Gas Transmission System L. P. And Iroquois Gas Transmission System, Inc. have constructed a natural gas transmission pipeline from the border of the United States and Canada through the states of New York and Connecticut to its terminus in Long Island, New York. Various rights of way have been acquired for the Connecticut portion of the pipeline including the subject property owned by the respondents Leonard J. Kopjanski and Irene Kopjanski hereinafter referred to as the Kopjanskis.
Your Committee has viewed the property, heard evidence from various witnesses including experts for both parties, has ascertained the value of the subject property both before and after the taking and assessed just damages all as pursuant to Chapter 284 of the Connecticut General Statutes.
The respondent Kopjanskis are the owners of that certain parcel of land located in the City of Shelton consisting of some 5.4 acres more or less and more commonly known as 31 Maple Avenue.
The petitioner holder of a Certificate of Public Convenience and Necessity, which it has filed with the Secretary of State for the State of Connecticut, has pursuant to § 16-263 of the Connecticut General Statutes acquired by condemnation an easement over and upon the Respondents property pursuant to the terms of said statute. CT Page 6755
 "Any corporation organized under the laws of this State or of any other state or of the United States for the purpose of constructing and operating a natural gas pipeline, which corporation holds a certificate of public convenience and necessity issued under the provisions of the federal Natural Gas Act, approved June 31, 1938, as it may be amended, authorizing such corporation to construct and operate a natural gas pipeline or pipelines and appurtenant facilities within this state, is authorized, upon compliance with the provisions of sections 16-264 to 16-267, inclusive, to acquire by condemnation and to enter upon, take and use such lands, rights-of-way, easements or other interests in land in this state as are necessary for the constructions, operation, maintenance and alteration of such pipeline or pipelines and the installation of compressor stations, appliances and other appurtenant equipment, and to operate the same subject to the terms and conditions hereinafter set forth, provided such corporation shall be held to pay al damages that may arise to any person or persons from such taking."
Section 16-263, Connecticut General Statutes
It is the inability of the parties to agree upon just damages that brings them before the Court and ultimately this Committee.
The easement as taken consists of a strip of land running along and parallel to the southerly boundary of the Kopjanski's property. It consists of a permanent easement 50 feet in width in which the pipeline itself rests. In addition, there was taken a temporary work easement immediately to the north of the permanent taking 25 feet in width and running parallel to the permanent easement.
The taking consisted of the following:
 (A) The permanent right to construct, operate, maintain, inspect, patrol CT Page 6756 (including aerial patrol), alter, relocate, remove, replace and repair a buried pipeline and all appurtenances, equipment or facilities useful or convenient in connection with or incidental thereto, including, without limit, telecommunications equipment necessary or useful for the operation thereof and minor above ground facilities such as test lead posts, valves and signs, for the carriage, transportation, storage and handling of gaseous or liquid hydrocarbons and any product thereof (such pipeline appurtenances, equipment and facilities are hereafter referred to as the "Pipeline") over, across and under a right-of-way 50 feet wide as hereinafter described ("the right of way"); (B) the temporary right to use the portion of land immediately to either side of the right-of-way designated as "Temporary work space" for a period of one year from the date of entry in connection with the construction of the pipeline; the permanent right of ingress and egress at any and all times over, along, across and upon the Right-of-Way; and (D) the permanent right to remove, cut, trim and keep clear all obstructions, trees, brush, and other objects that may injure, endanger or interfere with the construction, operation, maintenance or removal of the Pipeline. The rights, privileges and easements described in clauses (A), (B), (C) and (D) above are hereinafter referred to collectively as the "Easement Rights".
See Petition Paragraph 7.
The Respondents Kopjanski have the right to use and enjoy the land in any manner not inconsistent with the Easement Rights, provided that; "the owner shall not make, construct or place, any excavation, change of grade, water impoundment, tree, building, CT Page 6757 structure or other obstruction on the Right-of-Way without the prior written consent of the Petitioner". See Petition Paragraph 7, Page 8.
It appears from the testimony elicited during the hearings that while the growing of trees is prohibited on the easement, Leonard Kopjanski has been given oral permission to grow fruit trees on the easement.
Contradictory to this however is an informational statement dated April 1996 and sent to all landowners along the right of way clarifying what can and cannot be done upon the easement. This directive indicates among other prohibitions that trees taller than five feet should not be planted within the confines of the easement. Fruit trees are specifically mentioned. Also mentioned was Iroquois' right to remove from the right of way any tree that interferes with the operation and maintenance of the facility.
While Mr. Kopjanski has used the front portion of the property fronting on Maple Street and adjacent to their home as an orchard producing apples and peaches, the rear portion of the property contains a barn or stable and an open meadow where Mrs. Kopjanski keeps her horse. She is an ardent horse lover and enjoys horseback riding.
Both parties in their appraisal reports are of the opinion that the highest and best use of the property is for residential development with the petitioner being of the opinion that it should be held for future residential development while the respondent believes that it would be appropriate to effect a "first division" cut or lot of one acre fronting on Maple Street with the existing dwelling on the remaining 4.4 acres with a nominal one acre for the dwelling's lot reserving 3.4 acres for future development.
The Committee in assessing the positions of both parties as to the highest and best use of the subject property adopts the opinion taken by the respondent's appraiser.
The Certificate of Taking is for a temporary and permanent easement over and upon a portion of the property of the respondents herein, the permanent easement encompassing an area of 0.84 ± acres while the temporary easement encompassed 0.44 ± acres. CT Page 6758
"Damages recoverable for a partial taking are ordinarily measured by determining "`the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.'" D'Addario v.Commissioner of Transportation, 180 Conn. 355, 365, 429 A.2d 890
(1980), quoting Lefebvre v. Cox, 129 Conn. 262, 265, 28 A.2d 5
(1942). Valuation is a matter of fact to be determined by the trier's independent judgment. D'Addario v. Commissioner ofTransportation, supra, 369. In determining fair market value the trier may select the method of valuation most appropriate to the case before it. Laurel Inc. v. Commissioner of Transportation,180 Conn. 11. 37-38, 428 A.2d 789. (1980) and "has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable . . . . .". Cappiello v. Commissioner of Transportation,203 Conn. 675, 679-678.
In determining the before taking value the committee accepts the methodology of the respondent's appraiser, that is placing the residence on a nominal one acre piece of property along with a first cut one acre lot fronting Maple Street and retaining the remaining 3.4 acres as unimproved residential property to be available for future development. The committee finds the before taking value to be rounded out at $375,000. with the dwelling on its nominal one acre valued at $170,000., the first division lot fronting on Maple Street to be valued at $135,000. and the 3.4 acres of unimproved land valued at $20,000. per acre or $68,000.00.
A threshold question regarding the easement area must be resolved before any final conclusion can be reached as to the after taking value. That question relates to the application of the Shelton Zoning regulations to the subject property taking into consideration the presence of the pipeline easement. The inclusion or exclusion of the easement area in computing yard dimensional requirements for the particular zone must first be determined. Exclusion of the permanent easement area would have a negative influence on the value of the appraised land thus increasing the damages to the Kopjanskis. The road frontage available would be reduced some 50 feet from 397 ± feet to 347 ± feet. There would be a further reduction because of a CT Page 6759 30 foot right of way fronting on Maple Street for each internal lot This would further reduce the frontage to 287 feet thus reducing the available frontage below the zoning requirement.
Until the question of inclusion or exclusion is determined the committee can only make an alternative decision, determining the value with the easement area included and the value with the the Superior Court. It does not have the power to interpret the Shelton Zoning Regulations and therefore leaves that decision to the court.
The Committee will, however, proceed to make a finding in the alternative as to the after take value.
The first alternative is based on an exclusion of the easement area in determining lot area size and setback requirements. Under Shelton Zoning Regulations, in addition to excluding the 50 foot wide easement in computing the necessary frontage on Maple Avenue, a 30 foot wide right of way fronting on Maple Street would be necessary for each internal lot, in order to preserve access to the interior lots. This would then preclude the use of the first division cut or lot fronting on Maple Street north of the pipeline easement. Under these circumstances, the first division lot would then have to be considered as unimproved acreage, increasing the unimproved acreage area from 3.4 ± acres to 4.4 ± acres. Deducting therefrom the 0.84 ± acres permanent easement area the unimproved acreage would then total 3.56 ± acres, with a value of $20,000.00 per acre.
Subtracting 10% of its value because of the negative effect of its proximity to the pipeline, the committee values the unimproved acreage at $18,000 per acre.
While the easement area has a value of $20,000.00 per acre, 90% of its utility goes to the petitioner, while 10% remains with the respondent. The value of the 10% utility is $1,680.00. The dwelling on a nominal one acre is, as previously indicated, valued at $170,000.00. The loss attributed to the temporary easement is found to be $3,400.00. The after taking value under Alternative One is found to be $232,360.00 which the Committee rounds to $230,000.00. Under this alternative, damages are found to be $145,000.00.
Under Alternative Two the area within the easement may be included in determining lot area as well as side yards. Taking CT Page 6760 this into consideration, the Committee finds the after taking value under this alternative to be $305,000.00. In arriving at this figure, the Committee finds the dwelling on one acre to be valued at $170,000.00. A first division lot is feasible which the Committee values at $85,000.00. In addition, the remaining unimproved acreage of 2.9 ± acres with a 10% negative effect is valued at $18,000.00 per acres for a total of $52,200.00. The remaining easement area is valued at $1,000.00. The value of the temporary easement diminishes the total by $3,400.00. The after taking value under Alternative Two the Committee finds to be $304,800.00 rounded to $305,000.00. Thus, the damages under this alternative amount to $70,000.00.
An additional element to be considered by the Committee is the issue of "growing crops" damage. Neither appraiser however gives any considerations to such damages. The respondent's appraiser makes the statement in his report that "crops are not a value enhancement to the appraised land's Highest and Best Use". The petitioner's appraiser makes no reference to growing crops.
Regardless of the position of either appraiser, the court must give some meaning to § 16-268 of the Connecticut General Statutes. In order to do so the committee must first look at §§ 16-263 ad 16-266 of the General Statutes.
Section 16-263 of the Connecticut General Statutes reads in part as follows:
 ". . . . . provided such corporation shall be held to pay all damages that may arise, to any person or persons for any such taking" (Emphasis added) Section 16-263 Conn. General Statutes.
Section 16-266 dealing with the procedure for determining damages directs that the committee shall:
 ". . . . . assess just damages to the owner or owners of such property. . . ." Section 16-266
Conn. General Statutes.
Following this theme § 16-268 of the General Statutes contains the following:
". . . . . Such Corporation shall pay any damages CT Page 6761 for growing crops caused by the construction, maintenance, repair and reconstruction of any such pipeline. . . . . . ." Section 16-268 Conn. General Statutes.
Both appraisers have seen fit to leave out of their appraisal any consideration for the value of "growing crops". While §16-263 of the General Statutes requires that Iroquois "pay all damages" the Legislature saw fit to adopt § 16-268 requiring the pipeline to pay any damages for "growing crops". From this, one must conclude that the crop damage is not included in the phrase "all damages" for if that were to be so them the Legislature is being duplicitous. "`Courts must presume that Legislatures did not intend to enact useless legislation. WBergnerv. State, 144 Conn. 282, 287, 13 A.2d 293 (1957)'". Union TrustCo. v. Higgelund, 219 Conn. 620, 625-626 (1991). "`[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary and there is a presumption of purpose in a legislative enactment.'"84 Century Limited Partnership v. Board of Tax Review, 207 Conn. 250, 263,541 A.2d 478 (1988) quoting State ex rel Kennedy v. Frauwirth,167 Conn. 165, 168, 355 A.2d 39 (1974).
Is an orchard a "growing crop"? The Committee believes that it is. Black's Law Dictionary Fifth Edition defines a crop as: "Products of the soil as are annually grown raised and harvested . . . term includes fruit grown on trees. . . . ."
While there appears to be no authority in the State of Connecticut defining a growing crop the Supreme court of the State of Louisiana has ruled that a cultivated grafted pecan tree is a "crop" within the meaning of their statute. State ofLouisiana Dept. of Highways v. Luster, 277 So.2d 181, 182-183
(La App. 3rd Cir.), writ denied 281 So.2d 743 (La. Supreme Ct. 1973). The Committee is of the opinion that while it may take several years for an apple or peach tree to reach its maturity and come into production, nevertheless, it is a growing crop within the meaning of § 16-268 of the General Statutes and despite the fact that the highest and best use of the subject property is for residential development the respondents are entitled to be compensated for their loss. Otherwise, §16-268 was an exercise in futility by the General Assembly, an action which they could not have intended. One can readily assume that the legislature intended to protect the fruits of a farmer's labor whether it be a field of corn or an apple or peach orchard. CT Page 6762 In fact, one would have to conclude that these damages are in addition to the damages referred to in § 16-263, the damages based on the highest and best use to which the property can be put.
The defendant Leonard Kopjanski has an orchard which was bisected by the pipeline. Some 75 apple and peach trees were removed during the construction of the pipeline. The testimony of Mr. Timothy M. Shashok, an expert Pomologist, testified that while he did not examine the trees that were removed, the remaining trees were well cared for and were growing and producing at an optimal level. He estimated the loss to be $27,314.00, which the Committee rounds to $27,000.
Damages to be awarded pursuant to this report under Alternative One amount to $172,000.00 or under Alternative Two $97,000.00
Respectfully submitted.
Georg A. Saden
Milton H. Belinkie
Hugh C. Curran