[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action seeking a dissolution of marriage. It was tried to this court on December 11, 1997, February 24, 1998 and CT Page 6498 February 26, 1998. The plaintiff proceeded on his amended complaint dated February 27, 1997. The defendant's answer dated May 24, 1995 remained in effect. Practice Book § 10-61. After considering the evidence, reviewing the exhibits and listening to oral arguments of counsel, the court makes the following findings of fact and conclusions of law:
The parties were married in New York City, New York on October 20, 1984. The defendant has resided continuously in Connecticut for more than one year, next before the date of the amended complaint. The parties have two children, issue of the marriage: Jennifer F. Smith, d.o.b. July 25, 1986 and Hunter K. Smith, d.o.b. December 12, 1987. Neither party has received assistance from any governmental agency. Both parties allege that the marriage has broken down irretrievably. Both parties have admitted those respective allegations. The court finds from the evidence that the marriage has broken down irretrievably, and a decree dissolving the marriage should enter accordingly.
The plaintiff husband is 47 years of age and is in good health. He received a BA in economics and mathematics from the University of Denver. Thereafter, he became employed as a trainee at Bankers Trust in New York City and later as a loan officer in their Canadian group. He was first married in 1978 at which time he was Assistant Treasurer in the Treasury Department of CIT Financial Corporation in New York City handling international currency. There was a child, issue of that marriage. He was divorced in 1981. His child support order from his first marriage is $585 per month.
At the time of his marriage to the defendant he was employed selling Canadian securities to American institutions. He was drawing $60,000 per year plus a bonus of an equivalent amount. He earned $120,000 in 1984. In 1986 he left that company to become a partner in an investment banking firm. His salary was $125,000, plus a $125,000 guaranteed bonus. Due to the economic downturn he was laid off in 1988 due to lack of seniority. The plaintiff found himself unemployed with a large house, a large mortgage, two small children, and an unemployed wife.
He did not work for over a year. The parties agreed to sell their large home on Grahampton Lane in Greenwich. In the spring of 1990 he moved to Philadelphia and formed his own financial company. He started this business, Kellogg-Smith, Inc., a small brokerage house in Philadelphia, with $200,000 of net cash from CT Page 6499 the sale of the Greenwich home. His company traded in futures, options and currency on his own account on the Philadelphia Board of Trade. In the first year he made approximately $160,000, and he put that money back into the business after paying expenses. The entire family moved to the Philadelphia area, living in rental housing.
He sustained a loss of $86,000 in a few minutes during the Desert Storm bombing. At that point he was undercapitalized, and everything was on margin. His business never recovered. Eventually, he closed Kellogg-Smith, Inc. The family had already moved back to Greenwich.
In 1992 he came back to Greenwich and later obtained a retail job with Dean Witter as a bond salesman. During that time he lived on credit as well as on the defendant's income. He could not sell enough to meet the employee minimum. He was paid $3,000 a month on his commissions. He was let go six months later by Dean Witter. It was now the summer of 1994, and the plaintiff was again unemployed. In the meantime, the defendant was able to obtain employment as a mortgage broker with People's Bank where she currently is employed.
The plaintiff tried to find employment in financial consulting, corporate finance, brokerage and investment banking. He was out of work until 1995. Early in 1995 the parties separated. In June of 1995 he was able to obtain a job in Latvia with Coopers Lybrand LLP as a consultant. He was an independent contractor paid at a daily rate of $500 plus airfare. All other expenses were paid by the plaintiff. In 1996 he earned $40,745 gross income from Coopers Lybrand LLP. He next had a consulting assignment in June of 1996 with Fillmore Financial, working through Merrill Lynch in New York City. He had two assignments, each of three months with two months unemployment between. He was paid $20.00 an hour and worked at the World Financial Center in New York City. His 1996 W-2 for Fillmore Financial showed $16,270 gross. His 1996 income was $57,015 from those two sources.
He received a consulting assignment with Carana Corporation on May 7, 1997 in Romania. He was to sell coupons on the over the counter stock exchange in Romania. He was paid $550 a day, five days a week. His airfare was paid for. In addition, he received $67 a day for food, taxis and living expenses. That job lasted three months.
He was next assigned by Deloitte Touche LLP as a consultant CT Page 6500 in Bratislava, Slovakia where he is currently employed. He is on a six month assignment and is paid $8,333.33 per month. If he does not work, he is not paid. He receives no benefits. The plaintiff's employer is known as Deloitte Touche, Bratislava, Slovakia. He has no assets other than his claims to certain personal property now located in the defendant's Greenwich house, some of which are plaintiff's family heirlooms.
The defendant is 46 years of age and is in good health. She currently lives at 31 Fairfield Road in Greenwich, a single family house which she owns. She lives with the two minor children. They are currently attending public school and are in good health. She was educated in the public schools in Chicago, attended Northwestern University for four years, receiving a B.A. degree. She attended graduate school at Columbia University for two years, just short of her Master's degree. She worked throughout college. Her college expenses were paid largely by her earnings and student loans. She has worked since age twelve. Her first job was washing dishes at a Chinese restaurant. Her mother was a single parent. The defendant grew up in hard economic times.
She met the plaintiff in 1982 on an Amtrak commuter train. The defendant was then working for BA Capital, a real estate developer. She was trained as a city planner and did zoning on the Manhattan westside railroad yards. She took city planning courses at Columbia. She also worked for three years for the Norwalk mayor in the South Norwalk redevelopment project in the late 70's and early 80's. She worked in Greenwich for Willow Development, a Boston real estate developer, for five years from 1983 to 1988. She moved to the Philadelphia area because of the plaintiff's business at Kellogg-smith, Inc. She then had no job. The family lived in a cheaper rented house, and lived off the cash proceeds from the sale of their Grahampton Lane house. She applied for a job as a Philadelphia mortgage broker and was turned down. At this point the plaintiff's business was failing.
She moved back to Greenwich with the children, placed the children in public school, made all the arrangements for the move and obtained a mortgage brokerage job with Columbia Equities, all within a short period of time. The plaintiff was still living in an apartment in Philadelphia trying to close his business.
The defendant moved into a rental home on Deerfield Drive in Greenwich with a two year lease. The plaintiff visited on CT Page 6501 weekends. She became a mortgage broker for People's Bank on December 12, 1992 where she still is employed. Her first full year of employment was in 1993. She is paid essentially on a commission basis and in 1993 earned $150,000. There is no salary. She is paid only commissions on loans that close. The defendant works long hours; fifty to seventy hours a week. Her 1997 W-2 shows gross earnings of $270,731. Her prior earnings were: 1996, $224,286 and 1995, $165,272.
The largest asset of the parties was their interest in the single family house located at 49 Grahampton Lane, Greenwich. It was purchased jointly in 1984 for $585,000. Both parties contributed to the home purchase. Additional monies were given by his parents. The defendant was working in Greenwich for Willow Development earning $120,000 annually. They took out a first mortgage for $468,000.
In 1987 the parties obtained a $650,000 home equity line of credit secured by the Grahampton Lane home. This loan paid for substantial renovations. The wife was the general contractor and oversaw all the work. The renovations took more than a few years. These substantial renovations disrupted the lives of the family. There were a number of disputes and certain contractors were replaced. The renovations were finished after the plaintiff had left his investment banking job in 1988 and was essentially unemployed. The defendant was employed from 1984 through 1988 with only a few months maternity leave. The parties lived in the house for almost six years and were required to sell it because of their dire financial circumstances. The defendant was laid off from her Willow Development job in 1988. They were able to effect a sale of $1,900,000 and after the payment of mortgage and closing expenses, they netted approximately $800,000 from the Grahampton Lane house.
The parties entered into an oral agreement in 1990. Their entire assets would be divided equally. Other than personal property, their only asset was the profit from the sale of the marital home. It was agreed that the $800,000 profit would be divided into four shares: $200,000 was set aside to pay the capital gains on the sale of the real property, $200,000 was set aside for future living expenses for the family because the parties had no income; $200,000 would be given to the plaintiff as his own monies which he intended to use to open a small brokerage house in Philadelphia, and the last $200,000 was paid to the defendant. The marriage was rocky at that time. CT Page 6502
Of that total of $800,000, $600,000 has been spent. The capital gains taxes were paid. The $200,000 for family living expenses was used in Philadelphia and the plaintiff lost $200,000 when Kellogg-Smith, Inc. folded. The defendant currently has her $200,000 invested in her own assets, including the single family house at 31 Fairfield Road in Greenwich. During the last portion of his unemployment after the plaintiff lost his business in Philadelphia, his parents were giving him $3,000 a month, which funds were essential to the family support.
The plaintiff was not forthcoming concerning his financial affairs during the pendente lite portion of this case. He failed to provide adequate financial disclosure and a current financial affidavit for the pendente lite motions. The pendente lite hearings were continued for the plaintiff to provide financial affidavits. The plaintiff failed to appear and failed to file a financial affidavit. The court was required to reconstruct the plaintiff's earning capacity from bank deposit records. The plaintiff, after receiving notice of the pendente lite order, filed an appeal, which only further delayed any contribution that he could make to the family. The court concludes that the plaintiff has been less than forthcoming concerning his earning capacity.
Despite the lack of financial disclosure this court is satisfied that it can rely on Exhibit 9, a letter of employment from Deloitte Touche. Exhibit 9 indicates that the plaintiff's earning capacity is $100,000 annually. Further disclosure must be made by the plaintiff to verify the continued accuracy of these earnings. This disclosure problem is further compounded by the fact that the plaintiff is employed in an eastern European country and is unavailable for court hearings on a regular basis. The court, therefore, finds that the plaintiff has an annual earning capacity of $100,000 and an order should be based upon that earning capacity. Miller v. Miller, 180 Conn. 367, 371
(1980).
The parties divided their assets in 1990 when the Grahampton Lane house was sold. This 1990 division of the assets is found by this court to be equitable. The investment by the defendant of her $200,000 into her current assets and their growth is attributable solely to her efforts. Therefore, all the assets listed on her financial affidavit should continue to be owned by the defendant, free and clear of any claims by the plaintiff. The plaintiff has expended his $200,000 from the sale of the CT Page 6503 Grahampton Lane and lost it. He has no other assets other than the personal property located in the Fairfield Road house. The court further finds that there was no money left at the time that the Grahampton Lane house was sold. The family had no hard assets other than the $800,000 and personal property.
The court further concludes that the cause of the breakup of the marriage was due to the financial action and inactions of the plaintiff, and the plaintiff's failure to recognize that the financial burden of this family, from 1988 to date, had fallen on the shoulders of the defendant. Although the defendant has admitted from the years 1984 to 1988 that the plaintiff provided money in a meaningful way for the family, during that same period of time the defendant was also engaged in meaningful employment. In 1984 she earned $120,000, and $150,000 for each of the years 1985, 1986, 1987 and 1988, all with Willow Development.
The court finds that the plaintiff has made no contributions to any assets listed in the defendant's financial affidavit. The sole source of the monies for the purchase of the current family house at 31 Fairfield Road was made by the defendant. These funds came from her $200,000 portion of the Grahampton Lane house plus a construction mortgage and liquidation of her IRAs.
The defendant filed an employment law suit in 1990 suit against Willow Development. She received a settlement netting her $275,000. She was represented in that action by her current dissolution attorney. The plaintiff made no efforts to acquire, preserve or appreciate that employment claim. This asset, the inchoate employment claim was not divided or even contemplated by the parties when they equitably divided the Grahampton Lane sale payments.
The plaintiff's February 24, 1998 financial affidavit indicates a zero net worth. The defendant's December 11, 1997 financial affidavit indicates a net worth of $781,000 and liabilities of $48,250. These assets include 31 Fairfield Road, Greenwich $875,000 less or $559,500 mortgage; Charles Schwab investment account of $44,277, People's Bank 401K and IRA of $307,589; and furniture, art, jewelry and electronic equipment of $100,000. All of the defendant's assets, except for the $275,000 employment settlement, were acquired by her efforts and cash investment. The plaintiff has never resided in the home at 31 Fairfield Road. The court concludes that the division of the assets in line with their financial affidavits is fair and CT Page 6504 reasonable considering the parties' agreement in 1990 to divide on an equal basis their assets as of the date of the sale of the Grahampton Lane house.
Considerable testimony concerned the division of personal property. There were no appraisals of any of the personal property. Both parties testified. As owners of the personal property, their testimony as to value is admissible. The defendant has no valuable jewelry other than a diamond ring from the plaintiff's grandmother which is now owned by the oldest child, a daughter. The defendant did claim on a recent People's Bank mortgage application that she had art and antiques worth $200,000 and jewelry and other personal property worth another $85,000. There was no itemization of any of those assets nor were any items separately insured.
The court, having considered all the evidence and testimony and the standards and criteria set forth in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-83 and 46b-84, enters the following orders:
1. The decree dissolving the marriage will enter on the grounds of irretrievable breakdown.
2. Custody of the minor children is awarded to the defendant wife subject to the rights of reasonable visitation to the husband. It is noted that the General Statutes § 46b-56a(b) does not permit an award of joint custody since the parties have not stipulated as to joint custody. The parties shall confer on all major decisions concerning the minor children.
3. The defendant wife shall provide major medical, hospitalization and dental insurance through her employment naming the children as beneficiaries. The provisions of General Statutes § 46b-84d are ordered. Any unremibursed medical expenses for the children will be divided equally between the parties.
4. Each party will pay for their own attorney's fees.
5. This court finds that the combined income of the parties exceeds the Child Support Guidelines. The plaintiff is found to have an annual earning capacity of $100,000. The court orders that the plaintiff pay to the defendant the sum of $240 per week as child support. This order is retroactive to October 27, 1997. The plaintiff's Motion for Modification dated October 15, 1997, CT Page 6505 therefore, is granted, and this order will survive the entry of this decree.
6. The court finds that there was an order dated July 21, 1997 for child support at the rate of $540 per week. The court finds this order is retroactive to May 5, 1997 and the plaintiff is granted credits for payments made between May 5, 1997 and October 20, 1997. The court will retain continuing jurisdiction to determine the proper payments and credits to be given to the plaintiff. Any balance of unpaid child support on the July 21, 1997 order will be due and payable immediately. This order will survive the entry of the decree.
7. The wife is to pay and to maintain the life insurance currently issued by People's Bank naming the children as primary beneficiaries not exceeding the total sum for both children of $100,000. The court will retain continuing jurisdiction over this life insurance order.
8. The husband is to pay for and to maintain life insurance issued through his employer not exceeding the total sum for both children of $100,000 naming the children as primary beneficiaries. The court will retain continuing jurisdiction over this life insurance order.
9. The husband is to pay to the wife $1.00 a year alimony until the death of either party, the remarriage of the wife or September 30, 2007, whichever event first occurs.
10. The wife is to pay the husband the sum of $400 per month as alimony until the death of either party or December 31, 2005, whichever event first occurs. The first payment is due on April 1, 1998 and thereafter on the first day of each calendar month. The sum is to be paid whether or not the plaintiff pays child support. The sum is not to be deducted from any child support payments, and all payments of child support and/or alimony are to be paid independently of one to the other.
11. Each party will pay for and hold the other party harmless from any and all debts listed in their respective financial affidavits: the plaintiff's dated February 24, 1998 and the defendant's dated December 11, 1997.
12. Each party will continue to own free and clear from any claims by the other party the assets listed in their respective financial affidavits: the plaintiff's dated February 24, 1998 and the CT Page 6506 defendant's dated December 11, 1997.
13. The wife is to pay the husband $75,000 lump sum secured by a second mortgage on the home at 31 Fairfield Road, Greenwich, Connecticut. The court will retain continuing jurisdiction concerning the security for this lump sum. This lump sum payment will bear no interest and is payable at the rate of $7,500 per year commencing on April 1, 1998, and each April 1st thereafter. The court finds that that said $75,000 lump sum is the plaintiff's equitable portion acquired during the marriage from the $275,000 settlement by the defendant against Willow Development, on an after tax basis. This claim arose from her employment for the years 1984 through 1988. This court considers that this inchoate claim was a marital asset when the parties equally divided their assets in 1990.
14. If the plaintiff is determined to have any interest in any Smith family trust, this court will retain continuing jurisdiction until September 30, 2007 to divide that asset as property.
15. The parties have divided their personal property except for items 1-21 on the Defendant's December 11, 1997 Claims for Relief. Each party is ordered to receive an equal value of said twenty-one items of personal property. The matter is referred to the Family Relations Office for mediation. The first obligation of each of the parties is to prepare a list of the disputed personal property and the value of each item. The parties are to report back to the court within 30 days hereafter with a copy of that list. This court will retain continuing jurisdiction over the division of personal property.
16. The plaintiff will prepare the judgment file for approval and signature by the defendant.
KEVIN TIERNEY, JUDGE